Hubert L. WILL, John R. Bartels, Henry Bramwell, Lloyd H. Burke, William J. Campbell, Fred J. Cassibry, Mark A. Constantino, Jack M. Gordon, George B. Harris, Edward R. Neaher, Thomas Collier Platt, Jr., George C. Pratt, and Spencer Williams, on their own behalf and on behalf of all persons similarly situated, Plaintiffs,

v.

The UNITED STATES of America, Defendant.

No. 78 C 420.

United States District Court, N. D. Illinois, E. D.

Aug. 29, 1979.

Kevin M. Forde and Richard J. Prendergast, Chicago, Ill., for plaintiffs.

Anthony J. Steinmeyer and Lawrence J. Jensen, Dept. of Justice, Washington, D. C., for defendant.

## ORDER

ROSZKOWSKI, District Judge.

Plaintiffs, thirteen federal district court judges,[1] have sued the Government to recover compensation allegedly due them for their services as federal judges during part or all of the period commencing October 1, 1976 and continuing to March 1, 1977. Jurisdiction of this court is invoked pursuant to Title 28, United States Code, Section 1346(a)(2).

In this motion, we must decide whether the Compensation Clause of Article III § 1 of the United States Constitution has been violated by Congress' refusal to pay plaintiffs a cost-of-living adjustment for the salary periods commencing October 1, 1976 and October 1, 1977. Because we find that Congress' refusal to pay plaintiffs a cost-of-living adjustment directly diminished the compensation to which plaintiffs were entitled, we conclude that the Compensation Clause has been violated and, accordingly, we grant plaintiffs' motion for summary judgment.

The facts underlying plaintiffs' claims in the instant case are as follows. In 1975,

---

1. The named plaintiffs represent members of a class comprised of more than 600 judges of the United States District Courts. This class was certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure on March 20, 1979.

624

Congress amended Section 135 of Title 28,[2] the section which defines the salary component of a federal judge's compensation, to provide that:

Each judge of a district court of the United States shall receive a salary at our annual rate determined under Section 225 of the Federal Salary Act of 1967 . . as adjusted by Section 461 of this title.

In August, 1975, Section 461 of Title 28, the Executive Salary Cost-of-Living Adjustment Act (the "Adjustment Act"), was passed, providing that salaries of judges and other executive level employees shall include an annual adjustment measured by the average percentage adjustment in the General Schedule as determined under the Federal Pay Comparability Act of 1970 (the "Comparability Act"), 5 U.S.C. § 5305 et seq.[3]

On October 6, 1975, the President issued Executive Order No. 11883 adjusting General Schedule and Executive Schedule level salaries by an average of five percent, thus setting the salary of district judges at $42,000 effective October 1, 1975.

On October 1, 1976, the annual rates of pay for General Schedule employees were increased by an average of 4.8% in accordance with the applicable provision of the Comparability Act of 1970. Accordingly, on October 1, 1976, pursuant to the applicable provisions of the Adjustment Act, the President issued Executive Order No. 11941 adjusting all Executive Schedule salaries, which includes those of federal judges, by approximately 4.8%. The annual salary of circuit judges was thereby established at $46,800; the annual salary of district judges was thereby established at $44,000 effective October 1, 1976.[4]

Also on October 1, 1976, Congress passed the Legislative Appropriations Act of 1977,

P.L. 94–440 (the "Appropriations Act"). Among other things, this Act prohibited the use of funds to pay the salaries of Executive level employees, which includes federal district court judges, at a rate which exceeded the annual salary in effect on September 30, 1976. As a result, the 4.8% cost-of-living adjustment established by Executive Order No. 11941 was not paid to plaintiffs.

On July 11, 1977, Congress passed P.L. 95–66 providing that any adjustment in Executive Salary levels, which would ordinarily go into effect on October 1, 1977, "shall not take effect."

On September 28, 1977, the President issued Executive Order No. 12010, pursuant to the Comparability Act, increasing by an average of 7.2% the rates of pay of General Schedule employees. The Executive Order excluded a similar adjustment in the rate of pay applicable to federal judges and other Executive Schedule employees due to the limitation imposed under P.L. 95–66.

Plaintiffs' complaint contains two counts. Count I alleges that the Legislative Branch Appropriations Act of 1977, P.L. 94–440, had no effect on the lawful rates of pay to which the judges' became entitled under Executive Order No. 11941 and, as a result, Congress' failure to pay plaintiffs a cost-of-living adjustment for the period commencing October 1, 1976 violates the Compensation Clause. Additionally, plaintiffs' maintain that even if the Appropriations Act had the effect of redefining the applicable salary levels, such action by Congress nevertheless directly diminishes their compensation in violation of the Compensation Clause.

Count II of plaintiffs' complaint alleges that P.L. 95–66 also unconstitutionally diminished the plaintiffs' compensation inso-

2. Prior to the 1975 Amendment, Section 135 provided that "(e)ach judge of a district court of the United States shall receive a salary of $30,000 a year." The $30,000 salary was increased to $40,000 by operation of the Federal Salary Act of 1967. 2 U.S.C. § 351.

3. The Federal Pay Comparability Act provides a mechanism under which the vast majority of

federal employees have received each year since 1970, a pay adjustment approximating the rise in the cost-of-living in the private sector.

4. Circuit judges include judges of the Court of Claims and judges of the Court of Customs and Patent Appeals. District judges include judges of the United States Customs Court.

far as it purports to preclude payment of the salary adjustment commencing on October 1, 1977.

In response to these contentions, defendant filed a motion for judgment on the pleadings pursuant to Rule 12(c), Federal Rules of Civil Procedure, contending that both Public Law 94–440, the Appropriations Act of 1977, attacked in Count I and Public Law 95–66 attacked in Count II of plaintiffs' complaint suspended the operation of the Adjustment Act so that the cost-of-living increases did not become a part of judicial compensation. Additionally, defendant argues that even if the increases had become part of the plaintiffs' compensation, the compensation was not diminished in violation of the Compensation Clause because neither the Appropriations Act nor Public Law 95–66 had the purpose or effect of discriminatorily attacking the independence of judges through financial means. Accordingly, argues defendant, the plaintiffs have failed to state a cause of action and, therefore, judgment on the pleadings should be awarded in defendant's favor.

Plaintiffs, in turn, filed a motion for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure. Because this court has considered affidavits submitted by plaintiffs in rulings on these motions, we have considered the parties' allegations in accordance with the rules governing summary judgments. See, Rule 12(b)(6) and (c), Federal Rules of Civil Procedure. The Supreme Court has stated that summary judgment is appropriate where the court finds that on the basis of the pleadings and affidavits, no genuine issue of any material fact is presented and the moving party is entitled to judgment as a matter of law. See, e. g., *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1944) and Rule 56(c), Federal Rules of Civil Procedure.

In the instant case, the facts are not in dispute. The government does not dispute that plaintiffs were denied the cost-of-living adjustment provided for under 28 U.S.C. §§ 135, 461. Rather, the parties disagreement centers around the question whether the cost-of-living adjustment constitutes part of the "compensation" to which the plaintiff-judges are entitled. Plaintiff asserts that this adjustment is part of the compensation to which they are entitled by law, and consequently, Congress' refusal to pay those adjustments violates the prohibition in the Compensation Clause which prohibits the diminishment of a judge's salary during his continuance in office.

Defendant maintains that the adjustment does not comprise part of the compensation to which judges are entitled, and, therefore, Congress' refusal to pay plaintiffs these adjustments does not constitute a violation of the Compensation Clause. The government's position rests, however, on several unsupportable and unpersuasive grounds. First, the government argues that the cost-of-living adjustment does not become part of the compensation to which plaintiffs are entitled until the percentage by which the salary shall be adjusted is declared. Defendant maintains that until this percentage is declared and the statutory process is set into motion and completed, Congress has not definitely declared what sum a judge shall receive as compensation. Therefore, maintains defendant, prior to the time when the percentage is fixed, Congress may abort or suspend the process so as to bar judges from receiving a cost-of-living adjustment.

Second, the government maintains that even if Congress' action constitutes a diminution of plaintiffs' compensation, the diminishment in the instant case does not violate the Compensation Clause because it is not a diminishment which discriminates against judges in such a way as to make inroads upon their independence.

This court finds that the cost-of-living adjustment provided for under 28 U.S.C. § 135 constitutes a part of the compensation to which plaintiffs are entitled during their terms as judges, and consequently, Congress' refusal to pay those adjustments violates the Compensation Clause.

The Compensation Clause of Article III, Section 1 of the United States Constitution provides:

> The Judges, both of the Supreme and inferior courts, shall hold their offices during good Behavior and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.

■ Plaintiffs submit that once the Executive Salary Cost-of-Living Act granting judges "a salary at an annual rate determined under Section 225 of the . . . Salary Act . . . as adjusted by Section 461 of this Title", "The Adjustment Act", became law, the right to an annual adjustment, measured by the average adjustment in the General Schedule, became a part of a judges' compensation which may not be "diminished." We agree.

In *Miles v. Graham*, 268 U.S. 501, 508–509, 45 S.Ct. 601, 602, 69 L.Ed. 1067 (1925), the Supreme Court defined the constitutional term "compensation" stating that:

> The words and history of the clause indicate that the purpose was to impose upon Congress *the duty definitely to declare what sum shall be received* by each judge out of the public funds and the times for payment. When this duty has been complied with the amount specified becomes the compensation which is protected against diminution during his continuance in office.

(Emphasis Supplied). *See* also, *Evans v. Gore*, 253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887 (1920), and *Atkins v. United States*, 556 F.2d 1028, 1044 (Ct.Cl.1977).

■ Accordingly, when in 1975 Congress unequivocally declared that the compensation which "judges of a district court shall receive" shall include "an annual rate determined under Section 225 of the Federal Salary Act of 1967 . . . *as adjusted by Section 461* . . .", Congress complied with its duty to definitely declare what sum shall be received by each judge out of the public funds. Consequently, the annual salary provided under Section 225 "as adjusted by Section 461" became the compensation for the plaintiffs which was protected against diminution.

■ This conclusion is supported by a reading of both the history of the constitutional provision and the case law interpreting that provision. Contrary to the defendant's assertion, the case law does not state that a definite dollar amount must be declared, but rather, that Congress must specifically provide for the compensation to be paid to each judge. Once Congress has statutorily provided for the compensation to which judges shall be entitled, the compensation specified becomes protected against diminution during the judges' continuation in office. Whether Congress has specified a dollar amount which judges shall receive, or has provided a statutory method for calculating the amount a judge shall receive is immaterial. What is significant is the specific provision for judicial compensation, a provision which can then become the guarantee of compensation. *United States v. More*, 3 Cranch 159, 2 L.Ed. 397 (1803) is a case on point. In *More*, the Circuit Court of Columbia held that an Act of Congress abolishing fees charged by justices of the peace in the District of Columbia could not be invoked as to those justices who took office at a time when such fees were lawful. Central to the court's decision is the recognition that the compensation to which justices of the peace were entitled was the compensation provided for by law at the time the justices assumed office. Moreover, the fact that the amount of the fee was not determined until the completion of a judge's service was not material.

> The Act of Congress of the 27th of February, 1801, which constitutes the office of justice of peace . . . ascertains the compensation which they shall have for their services in holding their courts . . . .. This Compensation is given in the form of fees, payable when the services are rendered . . . .. If his compensation has once been fixed by law, a subsequent law for diminishing that compensation (*a fortiori* for abolishing it) cannot affect that justice of the peace during his continuance in office, . . ..

Clearly, on the basis of the *More* case alone, the only supportable conclusion in the instant case is that Congress' attempt to eliminate or avoid the provision for a cost-of-living adjustment provided for under Title 28 U.S.C. §§ 135, 461 as a component of plaintiffs' compensation is unconstitutional.

However, this result is mandated by subsequent Supreme Court cases construing the meaning of Article III § 1.

■ *Evans v. Gore*, 253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887 (1920) enunciated principles governing the application of the Compensation Clause.[5] The plaintiff in *Evans* had been a district judge since 1899. In 1919 the Act of February 24, 1919, 40 Stat. 1062, fixed his net income for the first time. The Court held that Article III § 1 prevented Congress from imposing an income tax on the salary of judges despite the fact that the tax applied uniformly to all individuals. Noting that the prohibition in Article III § 1 is general, containing no excepting words and applying to all diminutions whether direct, indirect or evasive, the court held that all diminutions,

> . . . which by their necessary operation and effect withhold or take from the judge a part of that which he has been promised by law for his services must be regarded as within the prohibition.

253 U.S. at 254–255, 40 S.Ct. at 553. In the instant case, the plaintiff judges were promised by law that their compensation would include "an annual salary" "as adjusted by" the cost-of-living adjustment provided for in 28 U.S.C. § 461. Accordingly, Congress' effort to withhold or take from the plaintiffs that component of their compensation comprised of a cost-of-living adjustment falls within the prohibition of the Compensation Clause.

After *Evans*, the Article III § 1 prohibition was applied to an income tax law enacted prior to a judge assuming office, and as a result the judge could not be taxed.

*Miles v. Graham*, 268 U.S. 501, 509, 45 S.Ct. 601, 69 L.Ed. 1067 (1925).

However, in *O'Malley v. Woodrough*, 307 U.S. 277, 59 S.Ct. 838, 83 L.Ed. 1289 (1939), the Supreme Court made it clear that the prohibition in the Compensation Clause applied only to diminutions effected during a judge's term in office. Critical to the Court's decision was the fact that Judge Woodrough had been appointed to his position *after* the effective date of the applicable tax law, § 22 of the Revenue Act of 1932, 47 Stat. 169, 178. Consequently, the judge would be required to pay the tax. The court took care to note that, though Judge Woodrough's income was being taxed pursuant to the Revenue Act of 1936 (49 Stat. 1648, 1657),

> . . . the power of Congress to include Judge Woodrough's salary as a circuit judge in his gross income must be judged on the basis of the validity of (the 1932 Act) . . . (f)or it was . .. (the 1932 Act) that gave notice to all judges thereafter appointed, of the new Congressional policy to include the judicial salaries of such judges in the assessment of income taxes.

307 U.S. at 280, 59 S.Ct. at 838–39. The critical point which emerges from these cases is clear. In each instance where Congress has attempted to effect a change in the compensation to which an Article III judge is entitled either by altering, amending, or repealing the statutory provision providing for the judicial compensation existing at the time the plaintiff judge assumed office, the Supreme Court has declared Congress' actions unconstitutional where it has resulted in a diminishment in the amount of compensation to which the judge was previously entitled. While such a change would be permitted if it were to increase a judge's salary, because of the Compensation Clause, Congress may not effect an alteration, amendment, or change

---

**5.** While *O'Malley v. Woodrough*, 307 U.S. 277, 59 S.Ct. 838, 83 L.Ed. 1289 (1939) overruled *Miles v. Graham*, 268 U.S. 501, 45 S.Ct. 601, 69 L.Ed. 1067 (1925) and, consequently, overruled a good deal of *Evans*, the Supreme Court's enunciation of principles concerning the meaning of the Compensation Clause continue to be valid. *See Atkins v. U. S.*, 556 F.2d 1028, 1043 (Ct.Cl.1977).

that would diminish what the judge was entitled to when he assumed office. The reasoning behind this prohibition is clearly demonstrated in the history of Article III § 1.

> The provision for the permanent support of the judges is well calculated, in addition to the tenure of their office, to give them the requisite independence. It tends, also, to secure a succession of learned men on the bench, who, in consequence of a certain undiminished support, are enabled and induced to quit the lucrative pursuits of private business for the duties of that important station.

1 Kent Com. 294.

The underlying import of Article III § 1 reflects the Founding Fathers' concern that the judges be ensured the same salary throughout their tenure as that provided for by law when they assumed office. With a guaranteed salary established, the independence of the bench, a bench which is not occupied by "men who depend upon the smiles of the crown for their daily bread," will be better insured. Chief Justice Taney discussed the importance of an independent judiciary stating:

> Its duties and powers are . . . of a character that requires it to be perfectly independent of the two other departments, and in order to place it beyond the reach and above even the suspicion of any such inference, the power to reduce their compensation is expressly withheld from Congress, and excepted from their powers of legislation. Language could not be more plain than that used in the Constitution.

157 U.S. 701, 702.

■ The government's assertion that the cost-of-living adjustment provided for in Title 28 U.S.C. § 135 is not a part of a judge's compensation until the percentage amount of the adjustment is declared misconstrues entirely both the language and the history of the Compensation Clause.

Defendants' argument leads to two results specifically prohibited by the Compensation Clause. First, this argument suggests that Congress has not fulfilled its duty to specifically declare what sum a judge shall receive during his continuance in office so that he is on notice when he assumes his position. However, as the case law makes clear, the purpose of the Compensation Clause was to impose this duty upon Congress so that the judiciary would not be dependent upon the smiles of the crown for their daily bread. *Miles v. Graham, supra.* Second, by contending that Congress may suspend the operation of the cost-of-living adjustment because it is dependent upon a complex statutory machinery, defendants are also suggesting that the annual salary component of Title 28 U.S.C. § 135 could conceivably be withheld because one must also look to another statutory section to determine what the stated annual salary shall be. This argument is tantamount to the suggestion that an employer need not honor the cost-of-living adjustment called for in a union-wage agreement because the exact amount of the adjustment was not known when the provision was adopted, a contention no labor lawyer would seriously advance.

The Compensation Clause's prohibition is not concerned with the method selected by Congress for determining judicial compensation. Rather, its concern is that once the method is selected it not be altered to diminish the compensation to which judges are entitled. Contrary to the government's assertion, Article III § 1 specifically intends to restrict and limit Congress' power over judicial compensation.

Moreover, if Congress had not intended that the cost-of-living adjustment be a part of the compensation to which plaintiffs were entitled, there would be no reason for the 1975 amendment which included this component provision in § 135, Title 28 U.S.C. for the first time, where previously there had been only a stated annual salary. In fact, *Atkins v. U. S.*, 556 F.2d 1028 (Ct.Cl.1977), a case heavily relied upon by defendants, was concerned with a claim similar to that made by plaintiffs in the instant case. However, central to the court's decision in *Atkins* that there was no violation of the Compensation Clause was

the fact that there was no statute providing for a cost-of-living adjustment.

■ In *Atkins,* plaintiffs claimed "that the failure of Congress to raise their salaries by more than five percent since 1969, coupled with severe economic inflation in the interim" was a violation of the Compensation Clause because the "real value" of purchasing power of a judge's unadjusted compensation had decreased.

In reaching its conclusion that this failure by Congress to adjust the judge's compensation did not constitute the prohibited diminishment contemplated in Article III § 1, the court distinguished between direct diminution and indirect diminutions. A clear understanding of the distinctions made by the *Atkins* court between direct and indirect diminutions is critical because it serves to directly undermine the defendants' second contention that the diminution alleged in the instant case does not violate the Compensation Clause's prohibition because it does not discriminate against judges in such a way as to make inroads on their independence.

The *Atkins* court specifically stated that where, as in the instant case, there is a direct diminution because Congress' attempts to alter or avoid the payment of a compensation provided for by law, the clause is unequivocal in its proscription. However, where an indirect diminution occurs, the court, while explicitly recognizing that a cause of action may be stated, required that such diminution be the product of a demonstrable discriminatory attack upon the independence of the judiciary in order to support the relief requested. In *Atkins,* the court found that Congress' failure to raise judicial salaries in the face of uncontrolled inflation resulted in an indirect diminution, but was not violative of the Compensation Clause because it could not be considered an assault upon the independence of the judiciary.

In the instant case, Congress specifically provided that a judge's compensation shall be an annual salary as adjusted by § 461, the Adjustment Act. Consequently, Congress' attempt to avoid, repeal, or suspend

the operation of this part of a judge's compensation amounts to a direct diminution of the plaintiff judges' compensation in violation of the Compensation Clause.

At this point it should be noted that a determination that the cost-of-living adjustment of 0% for any year could conceivably be permissible. But, the instant attempt to directly diminish plaintiffs' compensation by indirect means cannot be tolerated. In fact, Congress itself has recognized this limitation on their power to effect judicial salaries. In *O'Donoghue v. U. S.,* 289 U.S. 516, 53 S.Ct. 740, 77 L.Ed. 1356 (1932), the statute under consideration was the Legislative Appropriation Act of June 30, 1932. The Act provided in pertinent part for a reduction in the rate of compensation during the fiscal year ending June 30, 1933, for "all judges (*except whose compensation may not, under the Constitution, be diminished during their continuance in office*) . . . ." (Emphasis Supplied.) The issue in *O'Donoghue* was whether the plaintiff judge was appointed pursuant to Article III § 1, a fact not in dispute in the instant case. The Court in *O'Donoghue* noted that:

In framing the Constitution therefore, the power to diminish the compensation of the federal judges was explicitly denied, in order, *inter alia,* that their judgment or action might never be swayed in the slightest degree by the temptation to cultivate the favor or avoid the displeasure of that department which, as master of the purse, would otherwise hold the power to reduce their means of support.

289 U.S. at 531, 53 S.Ct. at 743. In fact, in the instant case, Congress has explicitly recognized this same limitation in their powers to effect a judge's salary during his continuance in office. Section (b) of the Adjustment Act, the very Act which is in dispute, provides that the pay adjustment provision of the Act "shall not apply to the extent it would reduce the salary of an individual whose compensation may not, under § 1 of Article III be diminished during such individual's continuance in office."

■ Moreover, it should be noted that Congress' failure to appropriate funds for the October 1, 1976 adjustment does not preclude recovery for compensation other-

wise due. In *New York Airways, Inc. v. U. S.,* 369 F.2d 743, 177 Ct.Cl. 800 (1966), the defendants contended that plaintiffs could not be paid because of Congress' deliberate action of appropriating less than the amount required to meet plaintiff's payments. The court rejected this argument stating:

> It has long been established that the mere failure of Congress to appropriate funds without words modifying or repealing, expressly or by clear implication, the substantive law, does not in and of itself defeat a Governmental obligation created by statute.

369 F.2d at 748, 177 Ct.Cl. at 810. *See also, State of Louisiana v. Weinberger,* 369 F.Supp. 856, 860 (E.D.La.1973); *Concerned Residents of Buck Hills Falls v. Grant,* 537 F.2d 29 (3rd Cir. 1976). Neither P.L. 94–440 nor P.L. 95–66 contains language which expressly or impliedly indicates that Congress was modifying or repealing the provisions of the Adjustment Act.

Nevertheless, in spite of the government's assertions as to the intended effect of P.L. 94–440 and 95–66, the fact remains that, as to the plaintiff-judges, Congress is powerless to effect a change which diminishes the compensation provided for by statute, and promised to plaintiffs, when they assumed office. For these reasons, plaintiffs' motion for summary judgment is granted.