## The Pennsylvania Railroad Co. *versus* Riblet.

1. A railroad company is not bound to make fences along their track unless required by their charter.

2. The Act of April 13th 1868 requiring railroad companies within Erie county to rebuild fences destroyed by fire from their trains, is within the police power of the state and is constitutional.

3. It is the duty of the legislature to provide for the public safety; and they have for this purpose all the legislative power of the Commonwealth.

4. Since the amendments of 1864, the title of an act is part of it.

5. The effect, not the purpose of an act, determines its validity.

6. Nothing but a clear usurpation of a power prohibited will justify pronouncing an act of the legislature void.

October 18th 1870. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Erie county*: No. 118, to October and November Term 1870.

Jacob Riblet brought an action before a justice of the peace

[Pennsylvania Railroad Co. v. Riblet.]

for the penalty imposed by the Act of March 23d 1868, "To secure farmers against losses caused by railroads in Erie county," and its supplement of April 23d 1868, Pamph. L. 424, 1022.— The act provided :—

"That it shall be the duty of each company owning or operating a railroad in the county of Erie, to erect, where not already erected, and to keep and maintain on each side of the track or tracks of said roads, at all places in said county, except where said road or roads pass through a village, borough or city, or a public road crosses the same, a suitable fence five feet high, to prevent cattle, sheep and swine from going upon said tracks; and in case any company referred to in this act shall neglect to perform the duty herein imposed, the company so offending shall be answerable to the owner or owners of any horses, cattle, sheep or swine the value of the property injured upon said roads in consequence of such neglect; said company or companies shall further be liable to the penalty of fifty dollars for each place along said roads in said county where the fence or fences required by this act to be built, kept and maintained, are destroyed or broken down and permitted so to remain for a period of three days; the penalty herein imposed to be recovered one-half to the use of the informer and the other half for the use of the school districts of the township in which said offence or offences shall be committed."

The supplement enacted, that the provisions of the above act "shall not apply to or upon lands in said county, in regard to which contracts exist by virtue of which the owners thereof are bound to build and maintain fences thereon along the line of the railroad passing through or along the same: Provided, That in all cases where fences along the line of any railroad are destroyed by fire caused by the running of trains or by the employees of any railroad, the said railroad company shall be liable to the penalties specified in the" above act.

The facts in the case were: that the plaintiff owned a farm on the line of the Philadelphia and Erie Railroad, used and operated by the defendants under lease, in the county of Erie; that fences were necessary along said road for the protection of his improved land and crops, and a portion of the same was burned by fire communicated by the defendants' locomotive since the 4th of July 1868, and that defendants neglected and refused to rebuild or repair the same, for the space of three days and upwards, and therefore plaintiff claimed to recover the penalty of $50 imposed by the foregoing act.

The justice rendered judgment for the penalty, $50. The defendants appealed to the Court of Common Pleas, where there was a verdict for the plaintiff for $50, subject to the opinion of the court as to the constitutionality of the acts imposing the penalty,

[Pennsylvania Railroad Co. *v.* Riblet.]

and if deemed unconstitutional by the court, judgment to be entered for defendants, *non obstante veredicto*.

The court (Johnson, P. J.) entered judgment on the verdict on the reserved point for the plaintiff.

The defendants assigned this for error, on the removal of the case to the Supreme Court.

*J. R. Thompson*, for plaintiffs in error.—The Philadelphia and Erie Railroad Company is not required by its charter to make or rebuild fences.    The Acts of 1868 impose new conditions without the consent of the corporation, and are therefore unconstitutional: Meadville *v.* The Erie Canal Co., 6 Harris 66; The City of Erie *v.* The Erie Canal Co., 9 P. F. Smith 174; Brown *v.* Hummel, 6 Barr 86.

*W. Benson*, for defendant in error.—A railroad is subject to the same rules and regulations as a natural person, provided they do not infringe its charter : Angell & Ames on Corp., § 265 *et seq.* The legislature may require railroad companies to fence, that being within the police power : Thorpe *v.* Rutland & B. Railway, 27 Vermont 140; State *v.* Noyes, 47 Maine 189; Madison & Indianapolis Railroad Co. *v.* Whitenck, 8 Ind. 217; New Albany & Salem Railroad Co. *v.* Tilton, 12 Id. 310; Indianapolis & Cincinnati Railroad Co. *v.* McAhren, Id. 552 ; Iowa *v.* Galena, &c., Railroad Co., 16 Iowa 6; Bulkly *v.* New York, &c., Railroad Co., 27 Conn. 479 ; Suydam *v.* Moore, 8 Barb. 358; Waldron *v.* Rensselaer and Saratoga Railroad Co., Id. 390; Talmage *v.* Rensselaer and Saratoga Railroad Co., 13 Id. 493 ; Abbott's Digest of Law on Corporations 643, § 381; Boston, Concord and Montreal Railway *v.* State, 32 N. H. 215; Dartmouth Coll. *v.* Woodward, 4 Wheat. 518; Moore *v.* Veasie, 32 Maine 343; Providence Bank *v.* Billings, 4 Peters R. 514 ; Easton Bank *v.* Commonwealth, 10 Barr 442; Peters *v.* Iron Mountain Railway, 23 Missouri 107; Lyman *v.* Boston and W. Railroad, 4 Cushing 288.    The legislature may give a new remedy: Hepburn *v.* Curts, 7 Watts 300; Schenly *v.* The Commonwealth, 12 Casey 29–57 ; Biddle *v.* Starr, 9 Barr 467 ; The Pittsburg Turnpike Co. *v.* The Commonwealth, 2 Watts 433 ; Taggart *v.* McGinn, 2 Harris 157 ; Sands *v.* Tillinghast, 11 Ind. 543; Camden and Amboy Railroad Co. *v.* Briggs, 2 Zabr. 623.

The opinion of the court was delivered, January 3d 1871, by

SHARSWOOD, J.—It appears to be well settled that without some provision in their charter to that effect, a railroad company is not bound to make or maintain fences along the line of their track: 1 Redfield on Railways 482; Railroad Company *v.* Skinner, 7

Harris 298.　It may be conceded that it would not be within the constitutional power of the legislature to impose such an obligation on any existing company : at all events, not on any company whose charter antedates the amendment to the Constitution of 1854 and contains no reservation to the legislature of the right to alter or amend it.　The plaintiffs in error succeeding to all the rights of the Philadelphia and Erie Railroad Company, which was incorporated by an Act of April 3d 1837, Pamph. L. 170, by the name of the Sunbury and Erie Railroad Company, and in which there is no such reservation, undoubtedly occupy this position. For the state now to attempt to impose any new burdens in addition to those provided in the charter would be for one party to add a new term to the contract without the consent of the other, and that would impair or make it worse as the word imports : City of Erie v. Erie Canal Company, 9 P. F. Smith 174.　It may also be conceded for the sake of the argument that it would not be in the power of the legislature to enlarge the common-law liabilities of such incorporated bodies for injuries to others, either as common carriers of passengers or merchandise, or as grantees of a right of way over the lands of others : at least, unless by some law or rule of general application to all persons, natural or artificial. We need express no opinion however upon so important a question here, as it is not involved in this case.　We may agree that the legislature could not make such a company liable to answer in damages for barns, houses or other improvements destroyed by sparks from their locomotives without negligence in them, their agents or servants.　These would be mere questions of private right between the parties, in which strangers or the public at large would have no interest.　The constitutionality of the proviso of the Act of April 13th 1868, Pamph L. 1022, does not depend upon a denial of any of these concessions.　It rests upon other and entirely different principles.　It may be true that the obligation to make and maintain the fences along the road is on the landowner.　If they fall to decay, are broken down by cattle or other trespassers, or are destroyed by fire, generally they are bound to repair.　The act in question indeed makes it the duty of the railroad company in the first instance to repair " in all cases where fences along the line of any railroad are destroyed by fire caused by the running of trains or by the employees of any railroad," and to do it promptly, under the penalty prescribed by the Act of March 23d 1868, Pamph. L. 424.　I am careful in the use of these words " in the first instance," because, as will be mentioned presently, we have nothing to do with any question of ultimate responsibility for the expense of the reparation.　It is true that this duty is not imposed upon the company in cases only where the destruction was caused by negligence, but absolutely without any regard to that question.　Hence the contention on

[Pennsylvania Railroad Co. v. Riblet.]

the part of the plaintiffs in error that the act is unconstitutional and void.

Above and beyond any question between the landholder and the railroad.company as to their respective rights and obligations, is that of the public safety. For that it is the duty of the legislature to provide; and for this purpose they are vested with all the legislative power of the Commonwealth. By the escape of cattle through breaches occasioned by the burning of fences, the lives of thousands of human beings travelling on the railroad may be in constant peril. Mr. Redfield says well that "the building of fences along the line of a railway track is no doubt in regard to the security of travel to be regarded as a matter of police:" 1 Redfield 496. In the opinion of the Supreme Court of Indiana, in The New Albany and Salem Railroad Company v. Tilton, 12 Ind. 3, carrying the principle much further than we are asked to do in this case, it is said: "When power is granted to organizations to prepare ways for carrying passengers from point to point with great celerity, but by the application of a propelling agent of known danger and almost irresistible power, it would appear but reasonable that a right should be lodged somewhere to maintain over such organization a supervisory control, by which they might be compelled, under penalties, to adopt appropriate means when discovered of lessening the great danger arising from the use of such agent and mode of conveyance. Such would be a police regulation—a regulation for the protection of the public." It cannot, I think, be doubted that the legislature could compel the landholder, under penalties, promptly to repair his fences even where the destruction is caused by the negligence of the railroad company or of others, leaving him to his legal remedy to recover his damages from those ultimately responsible. If so, they must have the same right to impose that duty upon the railroad company when the destruction has been caused by their act, even without fault or negligence on their part. I do not understand the provisions of the act in question to settle the ultimate responsibility of either party. That question does not arise in this case, and it is not meant to express any opinion upon it. It may well be doubted whether it would be in the power of one legislature by express contract to tie the hands of any succeeding legislature from the exercise of any necessary power of providing for the public safety. That would be to alienate a trust confided to them for the public good. But in this case they have never undertaken to do so. It is urged indeed that the act before us was not passed for this purpose, but as its title expresses "to provide for cases where farmers may be harmed by such railroad companies,"—and it is contended that this shows conclusively that it was the design of the legislature to impose this new burden upon the railroad company for the benefit of the landholders and not for the security

[Pennsylvania Railroad Co. v. Riblet.]

of the travelling public. The title of an act since the first amendment of the Constitution of 1864 must now be regarded as a part of it, however it may have been before. But that is important rather upon a question of construction than of power. We cannot try the constitutionality of a legislative act by the motives and designs of the lawmakers, however plainly expressed. If the act itself is within the scope of their authority it must stand, and we are bound to make it stand if it will upon any intendment. It is its effect, not its purpose, which must determine its validity. Nothing but a clear violation of the Constitution—a clear usurpation of power prohibited—will justify the judicial department in pronouncing an act of the legislative department unconstitutional and void.

Judgment affirmed.