Glancey et al., Appellants, *v.* Casey.

Argued November 11, 1971. Before JONES, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Norman C. Henss,* with him *Robert C. Duffy,* for appellant.

*William H. Smith,* Chief Counsel to the Auditor General, with him *Charles A. Woods, Jr.,* Deputy Attorney General, and *J. Shane Creamer,* Attorney General, for appellees.

OPINION BY MR. CHIEF JUSTICE JONES, March 20, 1972:

Prior to January 1, 1969, there were twenty-eight magistrates in the City of Philadelphia whose salaries, by statute,[1] were paid by the City. The chief magistrate's salary was $15,000 per annum and the salary of each of the other magistrates was $12,500 per annum. As of January 1, 1969, the office of magistrate was abolished: Article 5, Schedule 16(u) of the Pennsylvania Constitution. On January 1, 1969, a new Municipal Court, a court of record, and a new Traffic Court for the City of Philadelphia came into existence: Article 5, Section 6(c), and Article 5, Schedule 16(e) of the Pennsylvania Constitution.

The Governor of the Commonwealth then named twenty-two former magistrates as judges of the new

---

[1] Act of June 15, 1937, P. L. 1743, §37, *as amended,* 42 P.S. §1138(B).

Municipal Court and six former magistrates as judges of the new Traffic Court. Seven of the appointed judges of the Municipal Court—members of the bar of this Court—were termed "Law Judges" and fifteen of the appointed judges—nonmembers of the bar of this Court—were termed "Lay Judges." By virtue of Section 16(r) of the Schedule to Article 5 of the Constitution, the jurisdiction of the new Municipal Court, particularly as to the "Law Judges," was enlarged and exceeded the jurisdiction possessed by the former magistrates.

From January 1, 1969, until July 1, 1969, the judges of the Municipal Court performed their duties in full compliance with the constitutional requirements.[2] The Constitution of 1968 did not specify the amount of compensation to be paid to the Municipal Court judges. The only reference in the Constitution to judicial compensation is the mandate that "judges . . . shall be compensated by the Commonwealth *as provided by law*. Their compensation shall not be diminished during their terms of office, unless by law applying generally to all salaried officers of the Commonwealth." (Emphasis added) *See*, Article 5, Section 16(a).

During the period from January 1, 1969, until the passage of legislation on October 17, 1969, the Municipal Court judges were paid the *same salaries* they had been paid while acting in a magisterial status prior to January 1, 1969. During this period the judges submitted monthly vouchers requesting the Auditor General and the State Treasurer (appellees) to approve

---

[2] It is averred that these judges, during this period of time, conducted approximately 35,000 preliminary arraignments and hearings, that they heard and disposed of approximately 12,000 criminal cases and 19,000 civil cases, and that more than 3,500 criminal cases within the jurisdiction of the Common Pleas Court were assigned to the "Law Judges."

and to pay, respectively, salaries in the following amounts: President Judge, $21,000, payable $1,750 monthly, Law Judges, $20,000, payable $1,667 monthly, and Lay Judges, $16,000, payable $1,375 monthly.[3] Appellees, in the absence of any legislation, refused to approve and pay the amounts of said vouchers *in, excess of* the salaries which the said judges had been receiving when they were in a magisterial status.

Finally, the General Assembly, on October 17, 1969, enacted legislation which provided a salary scale for Municipal Court judges in the amounts requested. However, this statute provided that, although it should take effect immediately, the salaries fixed should "relate back to and be payable from July 1, 1969." Since July 1, 1969, Municipal Court judges have been paid the salaries fixed by such legislation.

The crux of the instant controversy is whether the Municipal Court judges are entitled to the salary payments under the statute retroactive to *January 1, 1969*.

The appellees, acting in their official capacities, continuing to refuse to pay any salary increases prior to July 1, 1969, on August 11, 1970, appellants filed in the Commonwealth Court a complaint in mandamus to which appellees filed preliminary objections.[4] On May 25, 1971, the Commonwealth Court sustained the preliminary objections and entered judgment for appellees.[5] From that judgment the instant appeal was taken.

---

[3] The salaries requested in the vouchers were the same as submitted to the General Assembly and as embodied in the then pending House Bill 128.

[4] These preliminary objections, in the nature of a demurrer, averred, *inter alia*: (a) lack of cause of action; (b) appellees lacked any authority and were under no duty until the legislature— the sole and exclusive authority to fix judicial salaries—acted to increase and/or fix the judicial salaries.

[5] The Commonwealth Court divided 5-2 in its determination.

Two issues are presented: (1) does the legislature have the *exclusive* constitutional authority to fix judicial compensation; and (2) is the salary-fixing statute invalid insofar as it makes salaries fixed therein retroactive only to July 1, 1969, rather than to January 1, 1969.[6]

It is clear beyond question that there is vested in the legislative branch of our government the power and authority to set the salary scale for the judicial branch of government. Article 5, Section 18 of the 1874 Constitution (no longer applicable) directed that the compensation for judicial salaries should "be fixed by law" and Article 5, Section 16(a) of our present Constitution provides that judicial compensation should be "as provided by law." Such constitutional directions unequivocally recognize the sole authority of the legislature to establish the amount of compensation to be paid the judiciary.

However, unlike the 1790, 1838 and 1874 Constitutions which provided that judges should "receive for their services an adequate compensation . . ." our present Constitution makes no mention of adequacy but simply provides that judicial compensation be "provided by law." Under the Constitutions of 1790, 1838, 1874 and the present Constitution, the authority has been vested in the legislature to fix the amount of judicial compensation for over 180 years. The only limitation on the legislative authority to do so— and that only arises by implication from the tripartite nature of our government and the importance of maintaining the independence of each of the three branches of government—is that such judicial compensation be *adequate* to insure the proper functioning of

---

[6] Appellants claim that the statute is severable and that *only* the retroactive clause, rather than the salary-fixing clause, is invalid.

84

the judicial system in an unfettered and independent manner.

In *Com. ex rel. Hepburn v. Mann,* 5 W. & S. 403 (1843), a landmark case upon which appellants rely, this Court, speaking to the Constitution of 1838 and its predecessor, the Constitution of 1790, stated: "They have not ordered a permanent salary simply, but they have directed an *adequate* salary to be provided, thereby securing, as far as human laws could do, the independence of that invaluable and indispensable branch of government [the judiciary]." (Emphasis added). 5 W. & S. at 408. Moreover, we further said, "that any construction . . . which tends to defeat or nullify this fundamental and vital principle of constitutional law, must be unsound." *Id.* To the rationale of *Mann* we continue to adhere but the factual posture in *Mann* is clearly inapposite to the factual situation presented on this appeal. In *Mann,* the legislature, through the medium of a repealed statute, sought to diminish the salary of a judge and such legislative action was held to be a clear and patent violation of the constitutional prohibition against the diminution of judicial salaries. In the case at bar, the legislature, by its inaction, failed to set up *any* new salary scale for judges occupying the newly-created judgeships.

Appellants rely also upon *Com. ex rel. Carroll v. Tate,* 442 Pa. 45, 51-57, 274 A. 2d 193, 196-200 (1971), *cert. denied,* 402 U.S. 974 (1971). *Carroll* is also presently inapposite in that it involved the appropriation by a legislative body of additional funds deemed necessary for the effective operation of the court system in Philadelphia but it did not involve judicial salaries.

Time and again, we have taken the position that the judiciary does not question the *wisdom* of the action of a legislative body. We cannot help but note, however, our dismay at both the legislative *inaction* for up-

wards of nine and one-half months in fixing by law the salaries for the newly-created judicial seats and the complete lack of judgment in not ameliorating the effects of such inaction by making the salaries, once they had been fixed by legislative action, retroactive to January 1, 1969. The appellants performed in exemplary fashion their duties, duties which have been much expanded by constitutional requirements, and yet no provision was made by the legislature for the payment of any salaries to such judges until more than nine and one-half months after their new judicial duties commenced. Only by virtue of the exercise of sound discretion by appellees have appellants been paid *any* salary and then only such salaries as had been fixed by law for magistrates whose offices had been abolished and whose official duties were very limited and restricted in comparison with the duties imposed by the new Constitution on the new Municipal Court judges. The legislature, by permitting this situation to exist, completely abdicated its function of legislative responsibility.

After more than nine and one-half months of inaction, the legislature acted and fixed salaries at a *then* adequate level but, for some unrevealed reason, made such salaries retroactive only to July 1, 1969. Appellants urge that we uphold that portion of Section 2 of the statute (Act of October 17, 1969, P. L. 259, 17 P.S. §711.2) which fixes the salaries of the judges but that we strike down as constitutionally infirm the date of the retroactive clause in Section 2—July 1, 1969—and make the Section retroactive to January 1, 1969.

The thrust of appellants' argument is that, by reason of the retroactive clause of Section 2, appellants are deprived of the salary increases over a six months'

period—January 1 to July 1, 1969—and thus the effect is a diminution of judicial salaries in violation of the Constitution.

We agree with the appellants that, even though the Constitution of 1968 simply mandates that judicial compensation shall be "fixed by law," unlike the much wiser and salutary mandates of the Constitutions of 1790, 1838 and 1874, which provided that judges should "receive for their services an adequate compensation," it is the constitutional duty and the obligation of the legislature, in order to insure the independence of the judicial (as well as the executive) branch of government, to provide compensation adequate in amount and commensurate with the duties and responsibilities of the judges involved. To do any less violates the very framework of our constitutional form of government. Almost 125 years ago, construing the Constitution of 1838, it was aptly stated: "The mandate requiring an 'adequate compensation' to be provided for all 'services' required of these judges is as imperative as that which prohibits its diminution during their continuance in office. The first is as obligatory as the last, springing equally with it from the great frame of government established by the people themselves as the paramount law, which neither legislators, governors, nor judges are at liberty to disregard. . . . It was for the safety of the people and not for the benefit of the judges that the latter were protected from legislative usurpation. To insure their independence it was as necessary to provide that they 'shall receive an adequate compensation for their services' as to declare that the compensation when 'fixed by law' shall not be 'diminished during their continuance in office.' "[7]

---

[7] In re Courts of Lancaster, 4 Clark 439 (1849).

Even if the retroactive clause of Section 2 is severable from the salary-fixing clause of that section[8]—which we hold it is not—we fail to see how that would benefit appellants. If we strike down as invalid the retroactive clause and sever it from the balance of Section 2, then appellants would be faced with the language of Section 28 of the statute which provides, "This Act shall take effect immediately." Section 28, the statute, including the valid portion of Section 2, would take effect on October 17, 1969, and appellants would be thus deprived of an additional three and one-half months of increased salary.

To offset this result, appellants would have us rewrite the retroactive clause to make the salaries effective as of January 1, 1969. For various reasons this we cannot do: in the first place, "[r]etrospective operation is not favored by the courts, however, and a law will not be construed as retroactive unless the act clearly, by express language or necessary implication, indicates that the legislature intended a retroactive application." Sutherland, Statutory Construction, §2201, p. 115 (3d ed. 1943). *See, also, Farmers Nat'l Bank and Trust Co. v. Berks County Real Estate Co.,* 333 Pa. 390, 5 A. 2d 94 (1939); *Regan v. Davis,* 290 Pa. 167, 138 A. 751 (1927). Furthermore, "[n]o law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature." Statutory Construction Act, Act of May 28, 1937, P. L. 1019, §56, 46 P.S. §556. *See, also, Com. v. Scoleri,* 399 Pa. 110, 160 A. 2d 215, *cert. denied,* 364 U.S. 849 (1960). In the second place, we would be intruding into the province of the legislative branch of government and assuming to legislate which, under our constitutional form of govern-

---

[8] Statutory Construction Act (Act of May 28, 1937, P. L. 1019, 46 P.S. §501); *Saulsbury v. Bethlehem Steel Co.,* 413 Pa. 316, 196 A. 2d 664 (1964).

ment, is beyond our judicial function. The obvious failure of the legislative branch to perform expeditiously and with responsibility its function to adequately compensate the appellants for their services from January 1 to July 1, 1969, cannot be cured by our assumption of the legislature's duties and by the excession of the scope of our power and authority.

We do not condone the failure of the legislature to provide that the salaries to be paid should begin on January 1, 1969. The Constitution placed upon these new judges of a new court responsibilities and duties far greater than the duties of the judges of the court which the Constitution abolished. Long before the Constitution became effective, the legislature knew, or should have known, of its provisions in this respect, and yet the legislature did nothing. Even after the Constitution became effective, the legislature waited nine and one-half months, during which appellants performed their duties in a conscientious manner, before fixing the appellants' new salaries. Such legislative inaction is beyond explanation or excuse.

Even after the leglislature acted it penalized appellants by failing to compensate them in a manner commensurate with both their duties and the performance of such duties.

However, every presumption is in favor of the constitutionality of acts of the legislative body and "[n]othing but a clear violation of the Constitution—a clear usurpation of power prohibited—will justify the judicial department in pronouncing an act of the legislative department unconstitutional and void." *Busser v. Snyder*, 282 Pa. 440, 449, 128 A. 80 (1925), citing *Pennsylvania R. R. v. Riblet*, 66 Pa. 164, 169 (1871). In the absence of any demonstration by the appellants that the legislative body clearly violated the Constitution, we cannot grant the relief sought. Moreover, if

we did strike down as invalid that clause which makes Section 2 retroactive only to July 1, 1969, we lack the power and authority to substitute in Section 2 a clause making the salaries retroactive to January 1, 1969. Our function is to interpret the law; that function does not embrace the right to make law or to legislate.

Until the legislature "fixed by law" appellants' compensation, the appellees were under no duty to comply with appellants' vouchered salary requests and, when such compensation was "fixed by law," appellees were under a duty to follow the legislative directive, which duty appellees performed.

Judgment affirmed. Each party to pay own costs.

Mr. Justice EAGEN and Mr. Justice ROBERTS concur in the result.

The former Mr. Chief Justice BELL and the former Mr. Justice BARBIERI took no part in the consideration or decision of this case.

---

CONCURRING OPINION BY MR. JUSTICE POMEROY:

I concur in the result reached by the Court today because it is manifest on this record that mandamus does not properly lie against these particular appellees, the Auditor General and the State Treasurer. The writ is available only "to compel the performance of a ministerial act or mandatory duty where there is a *clear* legal right in the plaintiff, a corresponding duty in the defendant, and a want of any other appropriate and adequate remedy." *Philadelphia Presbytery Homes, Inc. v. Abington Board of Commissioners*, 440 Pa. 299, 303, 269 A. 2d 871 (1970). Clearly, the writ cannot issue where the task sought to be compelled is beyond the scope of an official's duties.

Article 5, §16(a) of the Constitution of 1968 provides that "Justices, judges and justices of the peace

shall be compensated by the Commonwealth as provided by law." Schedule 16(u) to Article 5, abolished the office of magistrate and established in its place a Municipal Court and Traffic Court for the City of Philadelphia, with enlarged functions and responsibilities. It follows, therefore, that the Magistrates' Court Act of 1937, Act of June 15, 1937, P. L. 1743, No. 368, §37, as amended, 42 P.S. §1138, which contains authorization for the payment of magistrates, will no longer support any salary payment to appellants. Furthermore, Article 5, §16(a), *supra*, provides that compensation be paid to the judges of the new Philadelphia courts by the Commonwealth, while the Magistrates' Court Act orders payment by the City of Philadelphia. As the salary bill for these two courts which was finally enacted by the legislature, Act of October 17, 1969, P. L. 259, §2, 17 P.S. §711.2, related the increased salaries back only to July 1, 1969, it is clear that for the period commencing January 1, 1969, and ending June 30, 1969, there was *no law* authorizing the payment of salaries to appellants. That during this time they in fact received compensation at the old rate for magistrates does not affect the legal issues involved. In the absence of specific legal authorization of judicial salaries covering the period in question, appellees had no express legal authority to pay any amount.[1] They cannot now be compelled by a suit in mandamus to perform a further act admittedly beyond their legal powers, viz., to pay the increase in the new judicial rate over the old magisterial rate for the first six

---

[1] By Act No. 696, Appropriation Act No. 4-A of 1969, the General Assembly appropriated, *inter alia*, the sum of §137,500 for salaries for the 22 members of the Municipal Court and $38,750 for salaries for the 6 members of the Traffic Court for the period July 1, 1968 to June 30, 1969. This enactment, however, was strictly an appropriation, and did not establish a salary for judges serving on those courts.

months of the year. This would be so even if the compensation already paid for the six month period in question were constitutionally inadequate, an argument which has not been made in this case.[2]

---

[2] This is not to say that appellants may not resort to mandamus to compel the *legislature* to provide for their adequate compensation. See *Commonwealth ex rel. Carroll v. Tate*, 442 Pa. 45, 274 A. 2d 193 (1971); *Leahey v. Farrell*, 362 Pa. 52, 66 A. 2d 577 (1949). Such a suit would presumably involve, *inter alia*, the questions whether the amount of the old magistrate's salary, which in fact was paid to appellants for the first six months of 1969, was constitutionally adequate and whether the constitutional prohibition against diminution of judicial salaries during their terms of office, unless by law applying to all salaried officers of the Commonwealth, Article 5, §16(a), would inhibit the payment of any amount less than that provided by the Act of October 17, 1969, establishing a salary scale for the period commencing July 1, 1969. Any comment on these questions at this time would, of course, be both premature and unwise.