**David A. FIRICH, Plaintiff,**

v.

**The AMERICAN CYSTOSCOPE MAKERS, INC., a corporation, American Hospital Supply Corporation, a corporation, V. Mueller Company, a corporation, Stuart's Drug & Surgical Supply, Inc., a corporation, Defendants,**

v.

**Robert W. DOEBLER, M.D. and Sewickley Valley Hospital, Third-Party Defendants.**

**Civ. A. No. 79–738.**

United States District Court, W. D. Pennsylvania,

Jan. 11, 1980.

**1044**

William S. Schweers, Jr., Dennis C. Harrington, Harrington & Schweers, Pittsburgh, Pa., for plaintiff.

R. L. McMillan, Pittsburgh, Pa., for Stuart's Drug & Surgical Supply, Inc..

Thomas J. Reinstadtler, Pittsburgh, Pa., for American Cystoscope Makers, American Hospital Supply Corp. & V. Miller Co.

David H. Trushel, Pittsburgh, Pa., for Robert W. Doebler, M.D.

George M. Weis, Pittsburgh, Pa., for Sewickley Valley Hospital.

## OPINION

COHILL, District Judge.

On July 28, 1977, the plaintiff, David A. Firich, entered Sewickley Valley Hospital, which is located in the Western District of Pennsylvania. The following day, as part of a standard medical procedure, Dr. Robert W. Doebler inserted an ACMI Filiform No. 6 French Olive Tip and its follower into Mr. Firich. During the course of this procedure, the tip unexpectedly disengaged from its follower and lodged in the plaintiff's bladder. Surgery was necessary to remove the tip.

Mr. Firich, currently a residen⌄ of the District of Columbia, brought an action in this Court on May 29, 1979 against the four companies that allegedly had manufactured, distributed and sold the instrument in question. None of the four companies is a citizen of the District of Columbia; the plaintiff alleges damages in excess of ten thousand dollars exclusive of interest and costs. Thus, this case meets the requirements for diversity jurisdiction set forth in 28 U.S.C. § 1332 (1976). Venue lies in the Western District of Pennsylvania, where the claim arose. *See* 28 U.S.C. § 1391(a) (1976).

The plaintiff bases his claim against the four defendants on strict liability in tort under principles of law enunciated in *Restatement (Second) of Torts* § 402A (1965). The complaint states a claim upon which relief can be granted under Pennsylvania law. *See Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968); *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966). In response to

the complaint, three of the defendants filed a third-party complaint, pursuant to Federal Rule of Civil Procedure 14, impleading Robert W. Doebler, M.D. and Sewickley Valley Hospital. The third-party complaint alleges that negligence on the part of the third-party defendants, either jointly or severally, was the sole, direct and proximate cause of the plaintiff's alleged injuries. Specifically, the third-party complaint asserts that the third-party defendants negligently assembled the tip and its follower and negligently used this instrument in the course of performing a medical procedure.

Both the doctor and the hospital have moved this Court, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss the third-party complaint. They argue that the Pennsylvania Health Care Services Malpractice Act, 40 Pa.Stat.Ann. §§ 1301.101–1301.1006 (Purdon's Supp. 1979–80), deprives this Court of subject matter jurisdiction over that aspect of the case. The third-party plaintiffs oppose this motion. The parties addressed the Court on the issue through briefs and oral argument.

We will grant the third-party defendants' motion to dismiss the third-party complaint. Moreover, we recognize that under Federal Rule of Civil Procedure 12(h)(3), a federal district court has a responsibility to examine subject matter jurisdiction over an action even if the parties do not raise an objection. *See Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908). *Cf. Trent v. Allegheny Airlines, Inc.*, 431 F.Supp. 345, 351 (W.D.Pa. 1977) (court on own motion dismisses Title VII action for failure to include in complaint allegation of compliance with certain statutory prerequisite to court suit). *See generally* C. Wright, *Handbook of the Law of Federal Courts* § 7 (3d ed. 1976). After reviewing the elements of this case, we have determined that we must dismiss the entire lawsuit for lack of subject matter jurisdiction. We do not take this action lightly, but rather, only after careful study of the Health Care Services Malpractice Act and federal and state cases arising from that Act.

## I.

### The Health Care Services Malpractice Act

Confronted with skyrocketing medical malpractice insurance premiums, the Pennsylvania legislature in 1975 enacted the Health Care Services Malpractice Act [hereinafter referred to as the "Act"]. Through the Act the legislature sought "to make available professional liability insurance at a reasonable cost, and to establish a system through which a person who has sustained injury or death as a result of tort or breach of contract by a health care provider can obtain a prompt determination and adjudication of his claim." 40 Pa.Stat.Ann. § 1301.102 (Purdon's Supp. 1979–80). The system established by the Act moves malpractice litigation out of the courts and into an arbitration proceeding. The Act imposes a duty on the Governor to appoint an Administrator for Arbitration Panels for Health Care, who will serve within the Commonwealth's Department of Justice. 40 Pa.Stat.Ann. § 1301.301 (Purdon's Supp. 1979–80). When a claim is filed, the Administrator appoints an arbitration panel consisting of two attorneys, two health care providers and three lay persons to hear the case. 40 Pa.Stat.Ann. § 1301.308 (Purdon's Supp. 1979–80).

Section 1301.309 of the Act provides that

[t]he arbitration panel shall have original exclusive jurisdiction to hear and decide any claim brought by a patient or his representative for loss or damages resulting from the furnishing of medical services which were or which should have been provided. The arbitration panel shall also have original exclusive jurisdiction to hear and decide any claim asserted against a nonhealth care provider who is made a party defendant with a health care provider.

Until the Administrator selects a panel for a particular case, "a party may join any additional party who may be necessary and proper to a just determination of the claim. The arbitration panel shall have jurisdiction over such additional parties whether they be health care providers or nonhealth care

providers." 40 Pa.Stat.Ann. § 1301.502 (Purdon's Supp. 1979–80). "Appeals from determinations made by the arbitration panel shall be a trial de novo in the court of common pleas in accordance with the rules regarding appeals in compulsory civil arbitration and the Pennsylvania Rules of Civil Procedure." 40 Pa.Stat.Ann. § 1301.509 (Purdon's Supp. 1979–80).

■ As discussed earlier, the present case satisfies the requirements for diversity jurisdiction set forth in 28 U.S.C. § 1332 (1976). In a diversity action, a federal district court must apply the substantive law of the forum state. *See Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie Railroad v. Tompkins*, 304 U.S. 64, 68 S.Ct. 817, 82 L.Ed. 1188 (1938). Of course, this general principle is easier to state than to apply. Federal courts often have had great difficulty in determining what qualifies as "substantive law." *See, e. g., Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); *Woods v. Interstate Realty Co.*, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949). Employing the balancing test suggested by the Supreme Court in *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), the Third Circuit in *Edelson v. Soricelli*, 610 F.2d 131 (3d Cir. 1979), recently concluded that the *Erie* doctrine requires the federal courts to give effect to the jurisdictional provisions of the Health Care Services Malpractice Act. On the basis of this conclusion, the Third Circuit affirmed the dismissal by district courts of two cases in which non-resident, injured patients had asserted claims of medical malpractice against Pennsylvanian physicians and medical facilities. *Accord, Stoner v. Presbyterian University Hospital*, 609 F.2d 109 (3d Cir. 1979). These district courts had found that the Act confers original exclusive jurisdiction for malpractice actions on the state arbitration panels.

Under *Soricelli*, we must apply the Act in appropriate diversity cases. Significant differences between *Soricelli* and the present case, however, prevent the specific holding of *Soricelli* from controlling this action. In the consolidated cases that were before the Third Circuit in *Soricelli*, injured patients had instituted malpractice actions in federal court against the physicians and hospitals that had treated them. Physicians and hospitals fall within the Act's definition of "health care provider[s]." Section 1301.103 of the Act defines "health care provider," in pertinent part, as "a primary health center or a person, corporation, facility, institution or other entity licensed or approved by the Commonwealth to provide health care or professional medical services as a physician, an osteopathic physician or surgeon." Section 1301.309—set forth in its entirety above—explicitly grants original exclusive jurisdiction to the arbitration panels over cases brought by patients against health care providers. Thus, the *Soricelli* court affirmed the dismissals after finding that the *Erie* doctrine required federal courts to recognize the Act.

■ In the present case, however, the patient sued, on a products liability basis, four corporations that allegedly had manufactured, distributed and sold the ACMI Filiform No. 6 French Olive Tip. These corporations do not qualify as health care providers under the definition set forth in section 1301.103. Rather, they come within the term "nonhealth care provider." Section 1301.309 states that "[t]he arbitration panel shall also have original exclusive jurisdiction to hear and decide any claim asserted against a nonhealth care provider who is made a party defendant with a health care provider." The issue in the present case arises from the fact that the plaintiff has sued only the nonhealth care providers. The health care providers—Doctor Robert Doebler and Sewickley Valley Hospital—became defendants in this suit through a third-party complaint that the nonhealth care providers filed pursuant to Rule 14. Thus, this case does not coincide with the scenario outlined in the statute—a suit by a patient against a physician in which one of the two original parties joins a nonhealth care provider as a codefendant. Therefore, we must determine whether the state arbitration panel has original exclu-

sive jurisdiction over a suit by a patient against nonhealth care providers, in which the defendants have impleaded health care providers.

No court—federal or state—sitting in Pennsylvania has yet addressed this issue. Under the *Erie* doctrine, we must predict how the Pennsylvania Supreme Court, if confronted by the present case, would decide the question. *See Huddell v. Levin,* 537 F.2d 726, 733 (3d Cir. 1976); *Gates Rubber Company v. USM Corporation,* 508 F.2d 603, 605, 614 (7th Cir. 1975). *Cf. Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967) (analogizing determination of state law by federal court in diversity case with determination of the character of a property interest for purposes of federal estate tax liability). This prediction must flow from our analysis of the purpose underlying the Act and from judicial opinions that have explored analogous questions.

The Act seeks to minimize physicians' malpractice insurance premiums while providing maltreated patients with an efficient system for obtaining redress. In order to achieve these two goals, the legislature gave original exclusive jurisdiction over medical malpractice claims to arbitration panels that have expertise in medical and legal matters. The legislature also granted to these panels original exclusive jurisdiction over claims against nonhealth care providers when they are joined as defendants in actions against health care providers. This broad grant of original exclusive jurisdiction clearly indicates an intention on the part of the legislature to have the arbitration panels address all cases arising in Pennsylvania that have at their core a claim of medical malpractice.

We believe that the Pennsylvania Supreme Court would hold that the present case must be tried in its entirety before the arbitration panel. We reach this conclusion because the opposite finding would permit a substantial number of plaintiffs to forum shop, thus undermining the grant to the panels of original exclusive jurisdiction. Moreover, the opposite finding would nullify the second sentence in section 1301.309 of the Act. Such results would prevent the Act from achieving its objectives. A series of hypothetical situations that are derived from a single set of facts will illustrate the problem.

Assume that a doctor uses a particular piece of equipment to treat a patient. During the course of that treatment, the patient sustains injury. Arguably, the injury could have resulted either from a defect in the equipment or from the inartful use of the equipment by the doctor. Confronted with these facts, the injured patient could sue the doctor alone, in which case the arbitration panel would have original exclusive jurisdiction pursuant to the first sentence of section 1301.309. *See Kemery v. Commonwealth,* —— Pa.Cmwlth. ——, 405 A.2d 1116, 1118 (1979). The doctor would argue to the panel that he had acted properly, but that the equipment was defective.

Alternatively, the patient could sue both the doctor and the equipment manufacturer, arguing that the doctor had acted negligently and that the equipment was defective. Pennsylvania Rule of Civil Procedure 1020(c) allows a plaintiff to plead causes of action in the alternative.[1] Section 1301.309 explicitly endows the arbitration panel with original exclusive jurisdiction over such a case.

A third scenario would have the patient sue the physician. The physician then would join the equipment manufacturer as an additional defendant pursuant to Pennsylvania Rule of Civil Procedure 2252(a), asserting that the manufacturer is alone liable or liable over to him on the plaintiff's claim. Section 1301.502 of the Act allows this joinder of an additional party. Under Pennsylvania Rule of Civil Procedure 2255(d) and the cases interpreting that rule, "an additional defendant . . . becomes immediately subject to plaintiff's claim . . . with the same force and effect as if he had been originally named as

---

1. The Pennsylvania Rules of Civil Procedure are applicable to the malpractice arbitration proceedings. 40 Pa.Stat.Ann. § 1301.506 (Purdon's Supp.1979–80).

a defendant." *Sheriff v. Eisele,* 381 Pa. 33, 35, 112 A.2d 165, 166 (1955). *See Pushnik v. Winky's Drive-In Restaurants Inc.,* 242 Pa. Super. 323, 336–37, 363 A.2d 1291, 1298 (1976). Section 1301.309 expressly grants the arbitration panel original exclusive jurisdiction over a malpractice suit against a physician in which the physician joins a nonhealth care provider as an additional defendant. *See Morrison v. Therm-O-Rite Products Corp.,* 468 F.Supp. 1295 (M.D.Pa. 1979) (dismissing products liability case against manufacturer of medical equipment after health care provider joined manufacturer in action before arbitration panel).

In the final scenario, the patient would sue the equipment manufacturer alone. The manufacturer, in turn, would join the doctor under Pennsylvania Rule of Civil Procedure 2252(a), averring that the doctor had misused the equipment.

In all four hypotheticals, the trier of fact would hear evidence on the same two questions: (1) Was the physician negligent? and (2) Was the equipment defective? Both the physician and the equipment were integral parts of the medical services that were provided. *See, e. g., Morrison v. Therm-O-Rite Products Corp.,* 468 F.Supp. 1295, 1297 (M.D.Pa.1979). Expertise in medicine certainly would assist a trier of fact in exploring the alleged failure of these two components. In the first three scenarios, the arbitration panel, with its two legal and two medical specialists, undeniably would have original exclusive jurisdiction. By filing the present case, however, Mr. Firich impliedly contends that the arbitration panel would not have original exclusive jurisdiction over the final scenario even though the parties would address the same issues as in the first three hypotheticals.

If the plaintiff is correct, a substantial number of injured patients could circumvent the legislative scheme. Those patients who wanted an arbitration panel to hear their cases could sue the doctor and the manufacturer together or could sue the doctor alone and rely on him to join the manufacturer as an additional defendant. Under either approach, the plaintiff could recover against one or both of the defendants so long as he included in his complaint allegations implicating both defendants. *Cf. Staub v. Southwest Butler County School District,* —— Pa.Super. ——, 398 A.2d 204, 209 (1979) (concurring opinion, Hoffman, J.) ("The plaintiff can simply serve a nonhealth care defendant with a complaint replete with allegations of medical malpractice, and may be assured that the named defendant . . . will join the health care provider as an additional defendant."). On the other hand, those injured patients who wanted a court to decide their cases initially could sue the manufacturer alone and allow it to join the health care provider. The assumption that the manufacturer will join the doctor in an effort to avoid or minimize its liability is hardly unwarranted. *See Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 374 n. 17, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Thus, if the plaintiff's position is correct, an injured patient could circumvent the legislature's intent that a panel containing experts hear medical malpractice cases and that the panel have original exclusive jurisdiction over such cases.

■ Mr. Firich has filed his action in federal, rather than state, court. Federal courts hearing diversity cases operate under the Federal Rules of Civil Procedure rather than state rules of procedure. *See Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Sibbach v. Wilson & Co.,* 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941). Although we have discussed our hypotheticals against a background of state procedural rules, the same inconsistency would occur in federal court. Federal Rule of Civil Procedure 14(a) authorizes a defendant to implead an additional defendant "who is or may be liable to him for all or part of the plaintiff's claim against him." Rule 14(a) also provides that "[t]he plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff." Thus, in federal court, the third-party defendant does not automatically become subject to the plaintiff's complaint,

but Rule 14(a) permits the plaintiff to assert a claim against the impleaded party. Although the instant plaintiff has not yet asserted claims against Dr. Doebler and Sewickley Valley Hospital, we have no reason to believe that he will not take advantage of the opportunity that Rule 14 provides.[2] Therefore, under the plaintiff's theory, in both federal and state court, the pleading strategy will determine whether the arbitration panel has original exclusive jurisdiction.

Not only does the plaintiff's position undermine the legislature's grant of original exclusive jurisdiction to the arbitration system over malpractice claims against health care providers, but it also, for all intents and purposes, deletes the second sentence of section 1301.309 from the statute. This sentence provides that "[t]he arbitration panel shall also have original exclusive jurisdiction to hear and decide any claim asserted against a nonhealth care provider who is made a party defendant with a health care provider." The inclusion of this sentence reflects a legislative intent to have a panel, staffed with specialists, decide all issues of fact arising from injuries sustained during the delivery of medical services by health care providers. Under the plaintiff's theory, however, the arbitration panel may never hear any part of the malpractice action if a drug or medical equipment manufacturer is a possible defendant. A substantial likelihood exists that all such cases would be diverted from the arbitration system because plaintiffs naturally would prefer sympathetic juries to hear their cases. Thus, plaintiffs rarely would give the panels an opportunity to invoke the second sentence of section 1301.309.

In *Commonwealth v. Driscoll*, 485 Pa. 99, 401 A.2d 312 (1979), the Pennsylvania Supreme Court acknowledged that

[o]ur purpose . . . in any case requiring interpretation of a statute, is to give effect to the intent of the legislature. To determine that intent we look both to the statutory scheme, and to the specific language of the Act. We must assume that the legislature intends every word of the statute to have effect.

*Id.* at 106, 401 A.2d at 315 (citing 1 Pa.Cons. Stat.Ann. § 1922(2) (Purdon's Supp. 1964–78)). The Pennsylvania Supreme Court has recognized that it must not substitute its judgment on public policy for that of the legislature. *See Glancey v. Casey,* 447 Pa. 77, 84, 288 A.2d 812, 816 (1972). So long as the Supreme Court continues to follow *Parker v. Children's Hospital,* 483 Pa. 106, 394 A.2d 932 (1978), in which the Act was upheld against a plethora of constitutional challenges, it is inconceivable to us, in light of the principles enunciated above, that the Court would interpret the Act in a way that would effectively delete the exclusive jurisdiction provisions.

## II.

### Existing Case Law

Although no court has yet decided the issue that now confronts us, several have addressed the relationship between third-party practice and the exclusive jurisdiction of the arbitration panels. The Superior Court of Pennsylvania, in *Staub v. Southwest Butler County School District,* —— Pa.Super. ——, 398 A.2d 204 (1979), issued the leading opinion in this area. *Staub* involved a claim by a student for damages for brain injury sustained in a fall from gymnastics equipment during a physical education class. The plaintiff sued the school district in the Court of Common Pleas, alleging a negligent failure to provide proper equipment, instruction and supervision. The school district joined three additional defendants—the hospital where the student

---

**2.** Given the facts alleged in the complaint, any reasonable plaintiff would assert claims against both the manufacturer of the equipment and the health care providers. Both were intimately connected with the medical procedure that resulted in the plaintiff's injury. The discovery process may well uncover facts indicating that the health care providers, rather than the manufacturer, must accept responsibility for the separation of the tip from its follower. If such facts were revealed, surely the plaintiff would seek to assert a claim for negligence against the health care providers.

had been treated and two of the treating physicians. The third-party complaint alleged that the negligent delivery of medical services by the additional defendants had significantly aggravated the injuries that the student had suffered in the fall.

Through preliminary objections to the third-party complaint, the additional defendants asserted that the malpractice arbitration system had exclusive jurisdiction over the issues raised in that pleading. In response to these preliminary objections, the Court of Common Pleas ruled that it lacked jurisdiction to entertain not only the third-party complaint, but the entire case. On appeal, the Superior Court reversed, holding "that the Court of Common Pleas . . . has original jurisdiction to hear and decide this case in its entirety." 398 A.2d at 206.

Presenting the rationale for its decision, the Superior Court first noted that section 1301.309 of the Act grants the arbitration panels "original exclusive jurisdiction to hear and decide any claim brought by a patient or his representative for loss or damages resulting from the furnishing of medical services." The court then explained that the student had not filed a malpractice action against any health care provider, but rather, she had sued the school district alone. *Id.* at 206–07. The claim against the original tortfeasor—the school district—arose from a set of operative facts that had at its core a failure to provide reasonably safe instruction in physical education. The malpractice arbitration panels have no expertise in the issues that such a claim would present. Original jurisdiction for this claim clearly lay with the Court of Common Pleas. *Id.* at 207.

The school district, not the patient, joined the health care providers as additional defendants. It took this action because Pennsylvania law provides that the original tortfeasor is liable for any additional injury resulting from foreseeable medical treatment, even if that treatment is administered in a negligent manner. *See Embrey v. Borough of West Mifflin*, 257 Pa.Super. 168, 175, 180, 390 A.2d 765, 769, 771–72

(1978). Thus, if the student established liability on the part of the school district, the original tortfeasor would have to pay damages that included both the original injury and the injury inflicted by the health care providers. The school district joined the doctors and the hospital with a view to obtaining apportionment or contribution, if necessary.

The Superior Court determined that a plaintiff should not be forced by a defendant's action to litigate before an arbitration panel when the core of her complaint deals with a tort that is remote from and unrelated to the alleged medical malpractice. Likewise, the court believed that the existence of the Act should not prevent a defendant from protecting itself against additional damage liability. The court achieved a fair result by concluding that

[t]he Health Care Services Malpractice Act was not intended to deprive common pleas courts of all jurisdiction to hear medical malpractice cases. It merely postponed the exercise of that jurisdiction. The Act was intended to provide an administrative system for prompt determination of patients' claims for damages caused by the negligent delivery of medical services. Neither claims against persons who are not health care providers nor claims by alleged tortfeasors for contribution from health care providers are within the scope of original exclusive jurisdiction conferred upon malpractice arbitration panels.

. . . [I]n the absence of a contrary legislative intent, economy of time and personnel dictates that all issues be resolved in one action.

398 A.2d at 207. Thus, *Staub* stands for the proposition that a Court of Common Pleas may hear a medical malpractice claim in the first instance if that claim is ancillary to a nonmedical claim and if it is asserted by someone other than the patient.

The principles enunciated in *Staub* have received general acceptance in the courts of the Commonwealth. For example, in *Simko v. Bob Smith Ford, Inc.,* 5 D. & C.3d 538 (C.P. of Allegheny County 1978), the plain-

tiff sued Ford Motor Company and one of its dealers in the Court of Common Pleas, alleging that the defective condition of her Ford Pinto had caused an accident in which she sustained injuries. The original defendants joined two health care providers, claiming that the negligence of these health care providers had compounded the injuries of the plaintiff. The health care providers, arguing that the Act gave the arbitration panels original exclusive jurisdiction over all medical malpractice claims, moved the court to dismiss them from the action. The court denied the motion, stating that although

> the Malpractice Act represents the intent of the Pennsylvania Legislature to procure a speedy determination of malpractice claims against health care providers, there is no indication of a similar intent, to transfer to these arbitration panels, cases primarily grounded on non-health care issues. To reach such a conclusion could defeat the very purpose of the malpractice legislation and flood the panels with nonhealth care related cases.

*Id.* at 546 (footnote omitted). *Accord, Zielinski v. Zappala,* 470 F.Supp. 351 (E.D.Pa. 1979) (defendant, sued for falling on plaintiff while engaged in "frolicsome behavior and horseplay," may implead health care provider).

A motion to dismiss presented by health care providers raised particularly difficult problems in *Taglieri v. Logansport Machine Co., Inc.,* 6 D. & C.3d 716 (C.P. of Allegheny County 1978), *aff'd,* —— Pa.Super. ——, 405 A.2d 524 (1979). The original defendant, Logansport Machine Co., Inc., designs, manufactures, assembles and sells hydraulic presses. It sold a 27-ton press to Welch Equipment Company, which in turn sold it to the Westinghouse Air Brake Company. The plaintiff's decedent, who worked for Westinghouse Air Brake Company as a machine operator, was injured when a piece of the press fell on his foot. On the day of the accident he was treated at a local hospital and released. Three weeks later, doctors amputated one of the workman's toes. Eleven days after that operation, the workman died of a massive pulmonary embolism.

The plaintiff subsequently brought suit on a products liability claim against Logansport Machine Co., Inc. in the Court of Common Pleas. She also filed an action against various health care providers with the Administrator for Arbitration Panels for Health Care. Logansport Machine then joined these health care providers as additional defendants in the court suit. The health care providers moved the trial judge to dismiss them from the case.

The court denied the motion to dismiss, holding that the Act does not prohibit the "joinder of the health care providers as additional defendants in a non-health care suit." 6 D. & C.3d at 719. The court stated, however, that the Act does govern the liability of the health care providers; any liability over in the court suit will be "limited and dependent upon the health care malpractice proceedings." *Id.* at 720. This approach causes certain logistical problems. The court addressed them by suggesting that "the pending action could be continued until the malpractice claim before the arbitration panel was completed or, in the alternative, the liability over claim of original defendant could be severed for purposes of trial." *Id.* at 720 n. 2.

This examination of existing case law reveals that courts, despite some resulting inefficiency, will permit original, non-patient defendants to join health care providers as additional defendants when the original claim does not involve health care issues. The present lawsuit differs from these cases in one fundamental respect, however, necessitating a different result. In *Staub, Simko, Zielinski* and *Logansport Machine,* the claim against the original defendant arose from a set of operative facts that did not involve the delivery of medical services. By contrast, the instant plaintiff originally sued four corporations claiming that a piece of medical equipment was defective, and that he was injured by that equipment during the delivery of medical services. Thus, the plaintiff's original suit focuses on an integral component of a medical procedure.

The Commonwealth Court, called upon to define the term "nonhealth care provider" as used in the Act, has distinguished between defendants who are engaged in the manufacture and distribution of drugs or medical equipment and defendants who have no connection with the delivery of medical services. The issue came before that court in *Gillette v. Redinger,* 34 Pa. Cmwlth. 469, 383 A.2d 1295 (1978). The case arose when the parents of a decedent filed a claim with the Administrator for Arbitration Panels for Health Care against various health care providers. These defendants had treated the decedent after he had been struck in the head by a snowball.

One of the original defendants—Doctor Noel Gillette—attempted to join the snowball thrower as an additional defendant. Section 1301.502 of the Act provides that

[a]t any time up to the selection of the panel members, a party may join any additional party who may be necessary and proper to a just determination of the claim. The arbitration panel shall have jurisdiction over such additional parties whether they be health care providers or nonhealth care providers.

Concluding that "the Arbitration Panel did not have jurisdiction over a nonhealth care provider whose actions are not related to the furnishing of medical services," the Administrator refused to permit the joinder of the additional defendant. 34 Pa.Cmwlth. at 472, 383 A.2d at 1297. Dr. Gillette appealed this ruling, arguing that the language of the statute explicitly states that "a party may join any additional party." *Id.* at 473–74, 383 A.2d at 1298. The Commonwealth Court affirmed the Administrator, stating:

The Redingers and the Administrator counter that the Act's statement of purpose makes clear that it was created for the narrow purpose of providing a method of adjudication of claims of medical malpractice, and not for claims based on other alleged tortious conduct; they argue that the term "nonhealth care provider" does not refer to all persons not included in the definition of "health care provider" in Section 103, but rather was intended to encompass those persons who, like manufacturers of drugs or medical instruments, although not health care providers as defined by Section 103, are kindred to health care providers. . . . We agree.

*Id.* at 474, 383 A.2d at 1298.

The legislature intended that the arbitration panels hear cases that arise from the delivery of medical services. By establishing that the panels have jurisdiction only over health care providers and those that supply health care providers with medicine and equipment, *Gillette* identified the difference between *Staub* and the present case.

In *Staub,* where the injury occurred in a gymnasium, the original claim did not involve the delivery of medical services, and it was properly brought in the Court of Common Pleas. For reasons of efficiency and fairness, the Superior Court held that the trial court could hear the ancillary, third-party claim of medical malpractice. No problem of forum shopping arose because, under *Gillette,* the arbitration panel could not hear the claim against the school district no matter what the procedural context. In the present case, however, the original claim does arise from the delivery of medical services. The expertise of certain of the arbitration panel members would assist the panel in determining whether the Filiform No. 6 French Olive Tip was defective or whether the medical personnel improperly assembled or misused it. Moreover, a problem of forum shopping does exist because the arbitration panel would have had original exclusive jurisdiction over the claims against both the health care providers and the four corporations if Mr. Firich had sued all of the possible defendants in one action or if he had sued the health care providers in an arbitration proceeding and they had joined the corporations as additional defendants.

## Conclusion

It would be unrealistic for us not to acknowledge in this opinion a well-known fact that is not of record. The arbitration sys-

tem has been inundated with cases, has a woefully long backlog and does not appear to be working as the legislature had intended it to work. We do not blame plaintiffs for attempting to avoid it. We see this, however, as a problem that must be solved by the legislature, not the courts.

█ If we were to permit the present case to proceed directly to trial in federal court, we would be seriously undermining the jurisdiction of the arbitration panels, and as a result, defeating the purposes of the Act. Assuming that the Pennsylvania Supreme Court would continue to uphold the constitutionality of the arbitration system, we must conclude that the Supreme Court would not permit plaintiffs to evade the arbitration panels through a simple procedural device. A reasonable plaintiff, whose injury had arisen from the interaction of medical equipment and medical personnel, would sue both the health care provider and the manufacturer unless he intentionally was attempting to avoid the arbitration system. The legislature, when it drafted the Act's jurisdictional provision, assumed that injured patients would pursue a rational litigation strategy. We believe that the Supreme Court would give this jurisdictional provision an interpretation that would implement the intent of the legislature. Therefore, we hold that an injured patient initially must file any claim against a nonhealth care provider, as the Commonwealth Court in *Gillette* defined that term, with the Administrator for Arbitration Panels for Health Care when that patient reasonably can expect that the nonhealth care provider will join a health care provider as an additional defendant.