I. Raymond Kremer et al., Petitioners v. Alexander F. Barbieri, Court Administrator of Pennsylvania and Robert E. Casey, State Treasurer of the Commonwealth of Pennsylvania, Respondents.

Argued November 14, 1979 before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., ROGERS, BLATT, CRAIG and MACPHAIL. Judges MENCER and DISALLE did not participate.

*Marvin Comisky,* with him *Lawrence J. Beaser, Larry Haft* and *Robert C. Daniels,* for petitioners.

*Kathleen M. Quinn,* for Alexander F. Barbieri, respondent.

*Jonathan Vipond, III,* with him *Vincent X. Yako-wicz,* Deputy Counsel, *Louis G. F. Retacco,* Chief Counsel, for Robert E. Casey, respondent.

*William E. Woodside,* for House of Representatives.

*James H. Cawley,* for Senate.

*Gilbert Nurick,* with him *Francis B. Haas, Jr., William M. Young,* of *McNees, Wallace and Nurick,* for Pennsylvania Bar Association, Amicus Curiae.

*Stephen M. Feldman,* with him *J. Craig Currie,* for Philadelphia Bar Association, Amicus Curiae.

PER CURIAM, January 18, 1980:

For reasons which may well be obvious, we would have much preferred that this case be decided· elsewhere.

It is true that the petitioning judges and the petitioning association to which they belong, as well as all of the judges in whose behalf the petition is filed, are trial court and not appellate court judges. Nevertheless, our own position as appellate court judges may well appear to entail a conflict of interest. This we regret.

In addition, all of the petitioners—individually and collectively—are our colleagues in the judicial system of the Commonwealth of Pennsylvania. We know and respect them all and we understand the problems which they face in meeting their obligations now that the inflationary spiral has substantially reduced the purchasing power of their judicial salaries. Naturally, we would regret having to rule against them if our reading of the applicable law should so require.

Moreover, we realize that our own personal experience may color our evaluation of the factual data pre-

sented here, for we have ourselves experienced the problems encountered by the petitioners and all others whose fixed incomes have not kept pace with rising prices. Yet, of course, we must not permit this personal experience to influence our legal conclusions.

Finally, the fact that we do not have either the General Assembly or the Governor before us here concerns us greatly. The only parties who were joined as respondents by the petitioners are the State Court Administrator and the State Treasurer, yet clearly neither of these officials can take any action whatever with respect to *paying out* higher judicial salaries to trial judges unless funds are *appropriated* for that purpose by the General Assembly and unless such appropriation is either approved by the Governor or readopted by the General Assembly over his veto. Consequently, we must regretfully rule on this petition in the absence of having had the parties before us whose participation would have been most helpful if not indeed necessary.[1]

### Posture of the Case

As indicated above, the petitioners are individual trial judges and the Pennsylvania Conference of State Trial Judges, which is an association of trial judges, and their petition is in the nature of a complaint in mandamus against the State Court Administrator and the State Treasurer (respondents). They had previously petitioned the Supreme Court to assume extraordinary jurisdiction and that petition was denied, so we are therefore required to exercise our jurisdiction under Section 761 of the Judicial Code, 42 Pa. C.S. §761. An affidavit as to certain facts has been filed along with the petition by the petitioners and all

---

[1] For reasons apparent later in this opinion we do not comment here on our power to require the joinder of either or both of these parties.

parties have joined in a stipulation of facts which includes their agreement that the pleadings are closed and that there is no genuine issue as to any material fact. Amicus Curiae briefs have been filed by the General Assembly in support of the respondents and by the Pennsylvania and Philadelphia Bar Associations in support of the petitioners. Both the petitioners and the respondent State Treasurer have moved for summary judgment.

### THE COMMONWEALTH COMPENSATION COMMISSION REPORT

On January 30, 1979, the Commonwealth Compensation Commission (Commission) issued a report on compensation adjustments for cabinet officers, legislators and legislative officers, and justices and judges, which contained a recommendation, along with a recommended salary increases for members of the General Assembly and cabinet officers, that ''annual salaries of justices and judges . . . be increased by 15 percent, which figure represents an average increase of seven and one-half percent for the next two years.'' 9 Pa. B. 1029, 1033. Pursuant to the enabling legislation which governs the Commission's operations,[2] the report was scheduled to take effect with the force of law unless it was rejected by the General Assembly within 30 days of its submission.

On February 13, 1979, the State Senate passed a concurrent resolution which rejected the Commission report in its entirety, and on February 20, 1979, the State House of Representatives concurred in the Senate resolution. As a result, the petitioners here and the judiciary in general were denied an increase in their compensation, even though the report specifically noted that all of the increases which it proposed

---

[2] Section 14.2 of the Act of June 1, 1956, P.L. 1959, *as amended,* added by Section 6 of the Act of June 29, 1976, P.L. 452, 65 P.S. §364.

were required because "the purchasing power of top State officials has been seriously eroded by continuing inflation as measured by an estimated price increase of 55.7 percent [since 1972]." 9 Pa. B. 1029.

In support of their request to us that we issue a writ of mandamus directing the respondents to increase trial judge salaries to the level recommended by the Commission, the petitioners argue that the General Assembly's rejection of the Commission report was invalid because its members voted on the resolution without disclosing their personal interest in it. This argument is premised on the restriction in Article III, Section 13 of the Pennsylvania Constitution which provides that:

> A member who has a personal or private interest in any measure or bill proposed or pending before the General Assembly shall disclose the fact to the House of which he is a member, and shall not vote thereon.

Because the members of the General Assembly would have received a salary increase had the report become effective, the petitioners contend that the members had a personal interest in the matter. The petitioners note, however, that the legislative journals indicate no member's disclosure of the fact of his interest in the matter. They conclude therefore that the votes taken on the matter were invalid, that the legislative attempt to reject the Commission report was void, and that the report therefore became law at the expiration of the prescribed 30-day period for legislative action thereon.

We must reject this argument as without merit.

In the first place, our Constitution specifically gives to the members of the General Assembly the power to set the compensation for members of the General Assembly. Article II, Section 8 provides:

> The members of the General Assembly shall receive such salary and mileage for regular and

special sessions as shall be fixed by law, and no other compensation whatever, whether for service upon committee or otherwise. No member of either House shall during the term for which he may have been elected, receive any increase of salary, or mileage, under any law passed during such term.

Not only does this section permit legislators to vote on their own salaries, while at the same time attempting to minimize any possible self-interest by prohibiting an increase during the term of the legislature which votes for such increase, but we might note that the self-interest of every legislator in his own salary is so obvious to all that a declaration thereof could hardly be necessary.

In the second place, the petitioners' argument overlooks the fact that Section 13 of our Constitution, quoted above, not only requires that a member disclose his interest but also that, having done so, he must not vote on the matter. Consequently, if Section 13 applies as the petitioners argue that it should, no member of the General Assembly could ever vote on the matter of legislative compensation. This is a plainly absurd result which would defeat the clear intent of Section 8 that members should set their own compensation. We conclude, therefore, that the members of the General Assembly were not disqualified from voting on the report and, therefore, that they lawfully rejected it.[3]

## ADEQUACY OF JUDICIAL SALARIES

The petitioners also argue that the failure of the legislature to increase judicial salaries violates the principles of separation of powers, and they cite Ar-

---

[3] Because of this disposition, we need not reach the question raised by the General Assembly in its brief as to whether or not the regularity of the passage of the resolution is a justiciable issue.

ticle V, Section 16(a) of the Pennsylvania Constitution, which provides that:

> Justices, judges and justices of the peace shall be compensated by the Commonwealth as provided by law. Their compensation shall not be diminished during their terms of office, unless by law applying generally to all salaried officers of the Commonwealth.

They likewise cite *Glancey v. Casey,* 447 Pa. 77, 288 A.2d 812 (1972), in which our Supreme Court had occasion to discuss the constitutional dimensions of judicial compensation and concluded that, even in the absence of a specific constitutional requirement, the compensation fixed by the legislature must be *adequate*:

> [T]hough the Constitution of 1968 simply mandates that judicial compensation shall be 'fixed by law,' unlike the much wiser and salutary mandates of the Constitutions of 1790, 1838 and 1874, which provided that judges should 'receive for their services an adequate compensation,' it is the constitutional duty and the obligation of the legislature, in order to insure the independence of the judicial (as well as the executive) branch of government, to provide compensation adequate in amount and commensurate with the duties and responsibilities of the judges involved. To do any less violates the very framework of our constitutional form of government.

447 Pa. at 86, 288 A.2d at 816.

Clearly, our Supreme Court has recognized that the power to fix judicial compensation is committed to the legislature, and it has also noted in *Glancey, supra,* the limitation which "arises by implication from the tripartite nature of our government . . . that such judicial compensation be *adequate to insure the proper*

*functioning of the judicial system in an unfettered and independent manner."* 447 Pa. at 83-84, 288 A.2d at 815 (emphasis added).

In addition, the Supreme Court has specifically upheld the authority of the judiciary to mandate sufficient funding for the operation of the judicial system, holding that:

> Unless the Legislature can be compelled by the Courts to provide the money which is reasonably necessary for the proper functioning and administration of the Courts, our entire Judicial system could be extirpated, and the Legislature could make a mockery of our form of Government with its three co-equal branches— the Executive, the Legislative and the Judicial.

*Commonwealth ex rel. Carroll v. Tate,* 442 Pa. 45, 57, 274 A.2d 193, 199 (1971); *see Leahey v. Farrell,* 362 Pa. 52, 66 A.2d 577 (1949).

We believe, therefore, contrary to the assertion of the General Assembly in its brief, that this issue is justiciable.[4]

We are unable, however, to conclude that the petitioners' compensation is *constitutionally* inadequate as the term "adequate" has been defined by our Supreme Court; *i.e.,* so as "to insure the proper functioning of the judicial system in an unfettered and independent manner." *Glancey, supra.*

Even if we were to grant that the Commission report and the stipulations of the parties establish the inadequacy of the petitioners' compensation relative to that of lawyers in private practice and their peers on the United States District Courts with whom they once enjoyed parity,[5] or even that "it becomes in-

---

[4] *See Atkins v. United States,* 556 F.2d 1028 (Ct. Cl. 1977).

[5] Judges of the United States District Courts now receive $54,000 per year, while associate judges of the Pennsylvania Courts of Common Pleas receive $45,000. In 1972 they both earned $40,000 per year.

creasingly more difficult for Pennsylvania to recruit and retain the ablest jurists,'' as the Commission report indicates, 9 Pa. B. 1029, 1033, this is not in itself proof that the judicial system's proper functioning has thereby been impaired. The petitioners argue correctly, we believe, that the cost of living has increased 55.7 percent since December 1972, while judicial compensation in Pennsylvania has increased by only 12.6 percent during that period. And their affidavit reveals many other details of the serious and unfortunate economic sacrifices which trial judges must make as a consequence of their public service, including the increasingly widening gap between their salaries and the salaries of federal district judges. We cannot, however, equate the substantial personal hardship endured by the petitioners or the inadequacy of their compensation to meet their personal needs as well as to its inadequacy as compared to most of the federal district judges with an unconstitutional impairment of the judicial system.

We are forced to conclude, therefore, that the petitioners have not carried the heavy burden of demonstrating their right to judicial relief on the grounds of constitutionally inadequate salaries. To obtain such relief, we believe that they would have had to show not just that their compensation is inadequate in the terms in which they have described it but inadequate because it impairs the proper functioning of the judicial system. This they have not done. They have attempted to meet this burden by evidence as to the resignations of certain judges for economic reasons and the unwillingness of qualified lawyers (not named) to seek or accept judicial office. But they have offered no evidence whatever that the judicial system has been or is thereby impaired. We are constrained to add that this very failure to prove an impairment of the judicial system itself is a tribute to the devotion and dedica-

tion of our state trial judges. The fact that the functioning of the system continues in spite of the burdens placed upon the judges indicates the diligent and conscientious service which they nevertheless provide.

### REDUCTION IN JUDICIAL COMPENSATION

Similarly, we must reject the petitioners' further contention that Article V, Section 16(a) of the Constitution cited above has been violated because their compensation has actually been reduced.

Obviously, the legislature has made no direct attempt to reduce the judicial compensation.

The petitioners argue, however, that a reduction of their compensation has come about indirectly through the effects of inflation, and that the impact of this inflation has been unequal because certain salaried officers of the state government have received substantial increases in compensation so that the judges, who have not, have consequently suffered from discrimination. On the basis of the evidence before us, however, we must conclude that the General Assembly has not unconstitutionally singled out the judiciary for either a direct or an indirect reduction in compensation. *See Atkins v. United States,* 556 F.2d 1028 (Ct. Cl. 1977).

### THE RELIEF SOUGHT

Finally, and by way of justifying the relief requested, the petitioners have argued the propriety of mandamus in this case, as directed against the State Court Administrator and the State Treasurer. The functions of these state officials concerned here are, respectively, to prepare requisitions for judicial compensation payments and to make payment upon receipt of such requisitions. However, as Justice POMEROY stated in his concurring opinion in *Glancey v. Casey,* 477 Pa. 77, 89, 288 A.2d 812, 818 (1972):

[I]t is manifest on this record that mandamus does not properly lie against these particular appellees, the Auditor General and the State Treasurer. The writ is available only 'to compel the performance of a ministerial act or mandatory duty where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and a want of any other appropriate and adequate remedy.' Philadelphia Presbytery Homes, Inc. v. Abington Board of Commissioners, 440 Pa. 299, 303, 269 A.2d 871 (1970). Clearly, the writ cannot issue where the task sought to be compelled is beyond the scope of an official's duties. (Emphasis omitted.)

The Commission report as a whole, with its recommendations as to judicial salaries, was rejected by the General Assembly and never became effective. As a result, the respondents have no *statutory* duty, nor any power, to increase the petitioners' compensation. In addition, even if there were a *constitutional* duty which the petitioners could enforce, it would lie with the General Assembly, which alone has the power to make appropriations, and with the Governor, who may approve or veto such appropriations, and not with the respondents, who merely administer legislative appropriations. This case is clearly distinguishable from *Commonwealth ex rel. Carroll v. Tate,* 442 Pa. 45, 274 A.2d 193 (1971), in which the legislative and administrative heads of the city government (the Mayor and the City Council of Philadelphia) were made respondents, and mandamus was properly available against them.

We must therefore deny the petitioners' motion for summary judgment and enter judgment for the respondents.

ORDER

AND Now, this 18th day of January, 1980, the motion for summary judgment of the petitioners in the above-captioned matter is denied and the motion of the respondent Robert E. Casey is granted. Judgment is hereby entered in favor of the respondents.

---

DISSENTING OPINION BY JUDGE CRUMLISH, JR.:

I join in portions of Judge ROGERS' Dissenting Opinion but respectfully and emphatically express my disagreement with the tone and legal conclusions of the majority.

## I.

A Judge Should Perform the Duties of His Office Impartially and Diligently.[1]

In the discharge of our adjudicative responsibilities, we are admonished to exercise total independence in fidelity to the law, to be unswayed by partisan interests, adverse criticism, public clamor, peer pressure or popular acclamation. The Court's extended apology which precedes the substance of its opinion erroneously ignores the diligence and impartiality which the Canon commands. Being uncompromisingly committed to this principle, I must take exception.

Further, before I assert my disagreement with its conclusions, I must challenge the reasoning by which the majority reaches those conclusions. On page one, it writes, "we must not permit this personal experience to influence our legal conclusions."

While I grant its verity as relating to the process of unbiased decision making, I must reject this reason-

---

[1] Code of Judicial Conduct, Canon 3.

ing when it is utilized to ignore the uncontradicted recorded facts; for it is the responsibility of the Judiciary to apply the known certainty of the law to the record—no more, no less.

Judges, by definition, are human beings who have gifts of sense, emotion and reason which enable them to formulate judgments guided only by the ordained precepts of law. In attempting to resolve conflicts, we must always be conscious of this simple truism.

Succinctly stated, the issue confronting this Court is whether the financial remuneration of trial Judges of this Commonwealth is inadequate, the consequence of which must be the breakdown of the judicial machinery. Adequacy of compensation and the potential for serious impairment of judicial independence are not abstractions to be measured in a vacuum, but must be microscopically examined in terms of the responsibilities which face a jurist because of juridical position, societal demand and familial ties. His marital status, number of dependents, educational demands, geographic situs and standing in the community are all necessary factors to consider in assessing financial security, competence to faithfully execute duties independently, and the ability of the bench to continue to attract able jurists.

Therefore, unlike the majority, I cannot ignore human nature, and I bedrock my legal conclusions upon the uncontroverted facts of record and the natural inferences therefrom, which lead me to the only conclusion that compensation as presently provided is so inadequate as to jeopardize the unfettered perpetuation of judicial remedy.

## II. Adequacy of Compensation

A Judge Should Uphold the Integrity and Independence of the Judiciary[2]

---

[2] Code of Judicial Conduct, Canon 1.

I adopt the cogent legal analysis of Judge ROGERS. However, additional comment is in order and I will address the fallacious standard of proof imposed upon the petitioners. The majority, if I follow its reasoning correctly, insists that petitioners demonstrate, by a series of events, that the erosion of judicial compensation has threatened or impaired the efficiency and independence of the Judiciary or caused an immediate and irreparable collapse of the judicial branch.

In addition, it holds that evidence of inadequacy of the petitioners' compensation vis-a-vis their peers on the District Court of the United States and private practitioners; difficulty in recruiting and retaining able jurists; the unprecedented astronomical rise in the cost of living; and detailed revelation of serious, devastating economic sacrifices which trial judges must make as a part of their public service do not carry this burden.

This standard, in my judgment, goes beyond the instruction of *Glancey v. Casey,* 447 Pa. 77, 288 A.2d 812 (1972), blindly ignores the preventative nature of that instruction, and patently violates the Code of Judicial Conduct's exhortation to *protect* and *defend* the independence of the Courts.

'The mandate requiring an ''adequate compensation'' to be provided for all ''services'' required of these judges is as imperative as that which prohibits its diminution during their continuance in office. The first is as obligatory as the last, springing equally with it from the great frame of government established by the people themselves as the paramount law, which neither *legislators, governors, nor judges are at liberty to disregard. . . . It is for the safety of the people and not for the benefit of the judges that the latter were protected from legislative usurpation.* To insure their independence it was as

necessary to provide that they "shall receive an adequate compensation for their services" as to declare that the compensation when "fixed by law" shall not be "diminished during their continuance in office." ' (Emphasis added.)

*Glancey v. Casey*, 447 Pa. at 86, 288 A.2d at 816-17, citing *In Re Courts of Lancaster*, 4 Clark 439 (1849).

More importantly, by requiring that petitioners show judicial impairment by evidence of strikes, slowdowns, and other grievance mechanisms utilized in the private sector, the majority impinges upon the constitutionally-protected right of access to the Courts provided in Article I, Section 11 of the Pennsylvania Constitution:

All courts *shall* be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered *without* sale, *denial* or *delay*. ... (Emphasis added.)

By oath, I swore to uphold this Commonwealth's Constitution, and I cannot uphold a principle of judicial writing which would violate any section of this Constitution.

Therefore, I agree with Judge ROGERS' interpretation of *Glancey* that judicial compensation must be constitutionally adequate; that stipulated facts unequivocally provide support for petitioners' position; and that any result which would extend the burden of proof or place irrational demands upon the Judiciary to demonstrate more than inadequacy is fallacious, unreasonable and unconstitutional.

## III. REDUCTION IN JUDICIAL COMPENSATION

Justices, judges and justices of the peace shall be compensated by the Commonwealth as provided by law. Their compensation shall not be

diminished during their terms of office, unless by law applying generally to all salaried officers of the Commonwealth.[3]

Likewise, I reject the majority's holding that petitioners' compensation has not been "diminished" in violation of Article 5, Section 16(a) of the Constitution. The stipulated facts and affidavits in this record unequivocally establish that the current inflationary spiral has caused a substantial lessening of judicial buying power,[4] and that the Judiciary has suffered greater than any other class at the hands of the legislature, which from time to time has approved additional compensation for other salaried officers of the Commonwealth. The majority, however, would require for remedy either a direct legislative act diminishing judicial salaries or, as in this case, indirect action having as its purpose or intent the singling out of the Judiciary. The clear language of the Constitution does not distinguish between direct and indirect legislative action and provides that judicial compensation may not be diminished unless by law applying generally to all salaried Commonwealth officials.

## IV. THE RELIEF SOUGHT

Finally, the majority would dismiss petitioners' action for failure to join the proper parties. Again, I disagree. It is the function of the Court Administrator to prepare requisitions for judicial compensation payments, and the Treasurer to make payment upon receipt of these requisitions. Clearly, these parties have

---

[3] Pennsylvania Constitution, Art. 5, §16(a).

[4] During the period June 30, 1972-June 30, 1979, salaries of associate Judges of Pennsylvania Court of Common Pleas were adjusted by 12.5%. The cost-of-living index prepared by the United States Department of Labor shows a cost-of-living increase of 55.7% for the period 1972-1978, and a 73.3% cost-of-living increase for the period June 30, 1972-June 30, 1979.

the power and duty to provide the requested relief. If insufficient funds are available in the general fund to provide for such increases, then the duty lies with the Court Administrator and Treasurer to mandamus the legislature to appropriate additional funds.

Putting aside all fears, I would order respondents to execute the required vouchers for services rendered as provided in the report of the Commonwealth Compensation Commission to be calculated from the effective date provided in that report.

---

DISSENTING OPINION BY JUDGE ROGERS:

I respectfully dissent. Article V, Section 16(a) of the Pennsylvania Constitution provides that judges shall be compensated as provided by law. This provision has been definitively interpreted to mean that judges must be paid adequate compensation. *Glancey v. Casey,* 447 Pa. 77, 288 A.2d 812 (1972). I do not understand the court here to hold that this record does not establish that the petitioners are presently receiving less than adequate compensation. Nor would such a holding be possible. The report of the Commonwealth Compensation Commission dated January 30, 1979, made after the exhaustive study required by the statute which established the Commission, declares that the petitioners are inadequately compensated. That declaration and the findings on which it is based stand unrebutted on this record. It inexorably follows that the petitioners' constitutional right to adequate compensation, having been denied by the Legislature, must be vindicated by the judiciary.

I do not read *Glancey v. Casey, supra,* as declaring that Article V, Section 16(a) requires as a condition to relief from demonstrated inadequate compensation that the judges prove that the independence or efficiency of the judicial system has been destroyed. The

language of *Glancey v. Casey* depended on by the court here must be read in the context of the facts of that case. The judges there sought to recover money on account of inadequate compensation provided for past services; no complaint was made as to the adequacy of current salaries. It seems to me that the effectiveness of Article V, Section 16(a) no more depends on proof that the judiciary system is in fact ineffective or subservient than that the restraints of the First Amendment apply only after proof that the government has already closed the churches, destroyed the presses and dispersed peaceable assemblies of the people. Article V, Section 16(a) proscribes inadequate compensation, not compensation so inadequate that judges are presently incompetent or in thrall to the Legislature.

I would enter judgment for the petitioners and I would direct the respondents respectively to requisition and to pay the petitioners from the date of the court's order forward the amount of compensation reported by the Commonwealth Compensation Commission.