417 A.2d 121

I. Raymond KREMER, Charles P. Mirarchi, Jr. and
Eugene Gelfand, et al.

**and**

**The Pennsylvania Conference of State Trial
Judges, Appellants,**

v.

Alexander F. BARBIERI, Court Administrator of Pennsylvania

**and**

**Robert E. Casey, State Treasurer of the Commonwealth of
Pennsylvania, Appellees.**

Supreme Court of Pennsylvania.

Argued April 24, 1980.

Decided June 24, 1980.

Marvin Comisky, Robert C. Daniels, Philadelphia, for appellants.

Howland W. Abramson, Philadelphia, Vincent X. Yakowicz, Harrisburg, Charles W. Johns, Pittsburgh, for appellees.

William M. Young, Jr., Harrisburg, for amicus curiae Pa. Bar Assn.

Stephen M. Feldman, Philadelphia, for amicus curiae Philadelphia Bar Assn.

William E. Woodside, Harrisburg, for amicus curiae.

## OPINION

PER CURIAM:

Order affirmed.

LARSEN, J., filed a dissenting opinion in which FLAHERTY, J., joins.

LARSEN, Justice, dissenting.

I dissent.

On January 30, 1979, the Commonwealth Compensation Commission (Commission) issued a "Report of the Commonwealth Compensation Commission on Compensation Adjustments for Cabinet Officers, Legislators and Legislative Officers, Justices and Judges." This report recommended, *inter alia*, that "annual salaries of justices and judges   .   .   . be increased by 15 percent, which figure represents an annual increase of seven and one-half percent for the next two years." Report, 9 Pa.Bull. 1029, 1033 (March 24, 1979).[1]

The Commission's recommendation for a salary increase was made after exhaustive study and the resultant determination that the compensation of the judiciary had suffered serious and substantial diminution as a result of the inexorable inflationary spiral. In November, 1972, common pleas

1. The recommended raise was restricted to an average of 7½% per year so that the raise would have been in compliance with President Carter's voluntary wage guidelines then in effect.

judge's salaries were raised from \$32,500 to \$40,000. Since 1972 to the present, the salaries have been raised only once, to \$45,000, in 1976—a percentage increase of 12.5%. During the period from November, 1972 to March, 1980, the cost of living has increased by 88.1%. Consumer Price Index, All Commodities, U.S. Bureau of Labor Statistics.

The General Assembly voted down the recommendation of the Commission to increase judicial salaries.[2] On May 19, 1979, these proceedings were initiated in the Commonwealth Court. Petitioners, individual judges of the Courts of Common Pleas of several counties, and the Pennsylvania Conference of Trial Judges, sought a writ of mandamus against respondents Alexander F. Barbieri, Court Administrator of Pennsylvania, and Robert E. Casey, State Treasurer, seeking an order compelling respondents to, respectively, submit requisition vouchers and to issue checks for amounts reflecting an adequate compensation. The petition asserted the trial judge's salaries were constitutionally inadequate and that the legislature's failure to correct the inadequacy required the exercise of the inherent powers of the courts to determine what salaries are reasonably necessary to prevent impairment of the efficient administration of justice and to order such salaries paid. On January 18, 1980, the Commonwealth Court granted judgment for respondents upon their motion for summary judgment finding the judges' salaries were not constitutionally inadequate.[3] This direct appeal followed. I disagree with the Commonwealth Court and would therefore reverse.

Article V, § 16(a) of the Pennsylvania Constitution provides:

Justices, judges and justices of the peace shall be compensated by the Commonwealth as provided by law. Their

**2.** The Senate defeated the resolution sponsoring the recommendation on February 13, 1979; the House of Representatives on February 20, 1979.

**3.** This was accomplished by a per curiam opinion with separate dissenting opinions by Judge Crumlish and Rogers; Judges Mencer and DiSalle did not participate.

compensation shall not be diminished during their terms of office, unless by law applying generally to all salaried officers of the Commonwealth.

In *Glancey v. Casey,* 447 Pa. 77, 288 A.2d 812 (1972), this Court held that, in spite of the absence of the words "adequate compensation" from the 1968 Pennsylvania Constitution (whereas prior versions of our Constitution used such language), the legislative authority to establish the amount of judicial compensation was nevertheless limited by a requirement of "adequacy." It was stated in *Glancey,* 447 Pa. at 83–84, 288 A.2d at 815:

The only limitation on the legislative authority to [fix salaries]—and that only arises by implication from the tripartite nature of our government and the importance of maintaining the independence of each of the three branches of government—is that such judicial compensation be *adequate* to insure the proper functioning of the judicial system in an unfettered and independent manner.

It is the constitutional duty and obligation of the legislature, in order to insure the independence of the judicial (as well as the executive) branch of government, to "provide compensation adequate in amount and commensurate with the duties and responsibilities of the judges involved. To do any less violates the very framework of our constitutional form of government." *Id.,* 447 Pa. at 86, 288 A.2d at 816.

To be sure, the legislature, the judiciary and the executive branch operate primarily in harmony, each cognizant of the other's powers, duties and respective functions. Where that harmony breaks down, however, this Court has recognized, and implemented, the judiciary's "inherent power to preserve the efficient and expeditious administration of Justice and protect it from being impaired or destroyed." *Commonwealth ex rel. Carroll v. Tate,* 442 Pa. 45, 53, 274 A.2d 193, 197 (1971) (citations omitted).

Expressed in other words, the Judiciary *must possess* the inherent power to determine and compel payment of those sums of money which are reasonable and necessary

to carry out its mandated responsibilities, and its powers and duties to administer Justice, if it is to be in reality a co-equal independent Branch of our Government. This principle has long been recognized, not only in this Commonwealth but also throughout our Nation.

*Id.*, 442 Pa. at 52, 274 A.2d at 197 (lengthy citations omitted). Thus, should the legislature act arbitrarily or capriciously and fail or neglect to provide payment of adequate salaries to judges or their personnel whereby the efficient administration of justice is impaired, the court "possesses the inherent power to supply the deficiency. Should such officials neglect or refuse to comply with the reasonable requirements of the court they may be required to do so by mandamus." *Leahy v. Farrell*, 362 Pa. 52, 58, 66 A.2d 577, 580 (1949).

Indeed, the judiciary *must* have this power and *must*, if necessary, exercise it. The intrinsic power was recognized long ago by Mr. Chief Justice Marshall in the seminal case of *McCulloch v. Maryland*, 17 U.S. 316, 431, 4 L.Ed. 579 (1918) who stated for the United States Supreme Court:

the power to tax involves the power to destroy; * * * * " A Legislature has the power of life and death over all the Courts and over the entire Judicial system. Unless the Legislature can be compelled by the courts to provide the money which is reasonably necessary for the proper functioning and administration of the Courts, our entire Judicial system could be extirpated, and the Legislature could make a mockery of our form of Government with its three co-equal branches—the Executive, the Legislative and the Judicial.

When manipulation of the purse strings, or atrophy of the muscles used to pull them, threatens the independence of the judiciary and the administration of the justice system, the courts must assume their responsibility and determine the reasonable financial necessities of unimpaired operation, and must implement its determination.

In the case before us, overwhelming evidence[4] establishes that the present salaries of our trial judges are woefully inadequate and that this inadequacy has caused many able jurists to leave the bench of this Commonwealth and seek greener pastures in private practice or in the federal system. Illustrative of the inability of our trial courts to attract a reasonable number of able candidates, it should be noted that, in 1973 (when salaries for trial judges stood at $40,-000.00), no fewer than 68 candidates vied for 10 Allegheny County Court of Common Pleas Vacancies—in 1977 (with salaries increased to $45,000.00), those seeking election to that bench had dwindled to a mere 13 candidates for 6 vacancies. *See also* the Chief Justice Michael J. Eagen's Annual Report on the State of the Judiciary, May 3, 1979, 50 Pa.B.A.Q. 181, 184 (1979); *and* Commission Report, 9 Pa. Bull. 1029, 1033 (1979). The rate of inflation for the period from November, 1972 to the present exceeds 88% while the trial judges' salaries have increased only 12.5%. As noted, the salary of a common pleas judge was $40,000 in 1972. Assuming this was adequate then, the ravages of inflation have seriously diminished the purchasing power of this sala-ry—thus, even at $45,000 (including the $5,000 raise in 1976), the purchasing power in 1979 was equivalent in "1972 dollars" to $24,099 (based on Consumer Price Index comparisons).

In the meantime, salaries for all other segments of our society has kept much better pace with inflation. For example, a survey of salaries for 21 occupations in the Philadelphia area from 1972 to 1979 reveals a low percentage of 31.6%–42.5% (for public school teachers) and a high of 81% (for members of newspaper and magazine employees union).[5] Philadelphia municipal officers and employees have experienced percentage salary increases, in the same time-

4. There are no material facts in dispute, the parties having stipulated to the statistical evidence and to affidavits of various Commonwealth jurists.

5. *See* Appendix "A".

frame, of from a low of 37.5% (for the mayor) to a high of 72.7% (for the records commissioner).[6]

Salary comparisons between our trial judges, federal district court judges,[7] and professionals of equal education, age and background also reveal substantial inequality.[8] Clearly, given the backgrounds and competency of the majority of common pleas jurists, most could fair far better in the private sector, or in their federal counterpart. Moreover, the dilemma of the judges is exacerbated by the constitutional prohibition against engaging in the practice of law in any manner and the provision requiring judges to devote full time to their judicial duties. Pa.Const. art. V, § 17. Similar constitutional restrictions do not exist for members of the executive and legislative branches, who are therefore able to "moonlight."

Certainly, most judges have never expected their salaries to be on a par with the senior partners of the most prestigious law firms. Most did, however, expect their salaries to remain fairly stable and to at least approximately maintain their standards of living. Their expectations have not kept pace with the realities of inflation.

From the foregoing, I reach the only conclusion possible— the present salaries of the judges of the Courts of Common Pleas are constitutionally inadequate and have diminished substantially during their terms. Further, the failure of the

6. *See* Appendix "B".

7. Federal district court judges, until fairly recently, have historically received less compensation than our trial judges. Since 1975, however, they have received more. *See* Appendix "C". If two recent decisions are upheld (*Will v. United States,* 478 F.Supp. 621, N.D.Ill. 1979 and *Foley v. Carter,* No. 79–3063, D.D.C., March 24, 1980), their salaries will rise to $65,800 retroactive to October 1, 1979. Coupled with the significantly greater pension benefits (federal district court judges make no contributions to their pension fund while Commonwealth trial judges must make contributions which can be as high as 12% of their gross salaries), and the fact that no Social Security deductions are made from federal judges' salaries, the disparity in compensation is rapidly growing, thus encouraging "recruiting" of federal district court judges from the ranks of our trial courts.

8. *See* Appendix "D".

General Assembly to remedy the inadequacy requires this Court to exercise its inherent power to preserve the integrity of the bench and prevent the impairment of the efficiency of the administration of justice. While we should be reluctant to interfere with the legislature's fiscal authority, we should not shirk our responsibility and ignore our power to determine the reasonable necessities of the judiciary and to enforce those determinations. *See Leahy v. Farrell, supra* and *Commonwealth ex rel. Carroll v. Tate, supra.*

The legislature has acted belatedly to raise the salaries of the judges by $10,000. On October 13, 1979, the General Assembly passed House Bill 211 increasing the annual salaries of Pennsylvania trial judges to $55,000 effective December 1, 1980. I would assume, in the interests of preserving the harmony between the judicial and legislative branches as much as is possible under the circumstances, that the figure of $55,000 represented an adequate salary as of the date this action was initiated (May 19, 1979).[9] I would, therefore, order respondents to requisition salaries and issue checks for petitioner's from May 19, 1979 (the date of filing the petition for a writ of mandamus) based upon a salary of $55,000.

Additionally, having witnessed the adverse consequences of inflation, I believe the judge's salaries should contain an automatic annual cost of living increase [10] to enable our trial judges to keep pace with inflation and to render the occupation of judge sufficiently stable and appealing to continue to attract and maintain qualified and competent jurists. This annual adjustment of judicial salaries would place the judges on approximately equal footing with most of the

9. This figure is not sufficient to make today's salary equivalent (in "1972 dollars") to the salary of 1972. In essence, this salary represents a percentage increase of 37.5% since the 1972 $40,000 annual salary—this percentage increase is substantially less than the percentage increases of the cost of living for the same period, according to the Consumer Price Index. In fact, this represents an increase of less than 5% per annum. However, given the research, time and debate of the legislature, I would adopt this figure as the constitutional minimally adequate salary.

10. Or in the presently unlikely event that the cost of living declines, the salary should reflect that cost of living *decrease.*

other members of the labor force in the Commonwealth whose salaries keep closer pace with the rate of inflation because of their unions or the supply/demand nature of the labor marketplace. The automatic adjustment also would remove the problem presented by the within case from both the legislature and the courts by allowing the economy to fairly and automatically set judicial salaries.

Accordingly, I would reverse the Order of the Commonwealth Court granting respondent's motion for summary judgment. I would further Order that respondent Barbieri requisition vouchers reflecting the increased compensation in accordance with this Opinion and that respondent Casey issue pay checks in like amount. Sadly, the majority position will continue to allow the system of justice in this Commonwealth to slide into mediocrity.

FLAHERTY, J., joins in this dissenting opinion.

APPENDIX "A"

| EMPLOYEE GROUP OR INDIVIDUAL | PERCENTAGE INCREASES IN COMPENSATION (From 1972 to 1979 except as noted) |
|---|---|
| PHILADELPHIA MUNICIPAL WORKERS (District Council #33) | 49.7% |
| PHILADELPHIA POLICEMEN | 57.8% |
| PHILADELPHIA FIREMEN | 57.8% |
| NEWSPAPER & MAGAZINE EMPLOYEES UNION (Includes Mailroom employees for the Phila. Inquirer, Bulletin, Daily News and Triangle Publs.) | 81% (A new contract effective 9/30/79 increased their wages by 7.8% from 73.2% to 81%.) |

| EMPLOYEE GROUP OR INDIVIDUAL—Continued | PERCENTAGE INCREASES IN COMPENSATION (From 1972 to 1979 except as noted) —Continued |
|---|---|
| PHILADELPHIA BUILDING AND CONSTRUCTION TRADES COUNCIL AFL–CIO MEMBERS | |
| Asbestos Workers | 51.8% (Will receive an increment of 3.3% in 1980 which will result in an increase from 48.5% to 51.8%.) |
| Boilermakers | 62.5% |
| Carpenters | 50.5% (Will receive an additional 3.5% in 1980 which will result in an increase from 47% to 50.5%.) |
| Cement Masons | 66% |
| Electricians (Local #98) | 54.4% (Will receive an increment of 3.2% in 1980 which will result in an increase from 51.2% to 54.4%.) |

APPENDIX "B"

| EMPLOYEE GROUP OR INDIVIDUAL | PERCENTAGE INCREASES IN COMPENSATION (From 1972 to 1979 except as noted) |
|---|---|
| PHILADELPHIA CITY GOVERNMENT OF-FICIALS | |
| Mayor | 37.5% |
| Managing Director | 47.1% |
| Director of Finance | 47.1% |
| City Solicitor | 47.1% |
| City Rep. & Dir. of Commerce | 47.1% |
| Police Commissioner | 55.2% |
| Streets Commissioner | 55.2% |

| EMPLOYEE GROUP OR INDIVIDUAL—Continued | PERCENTAGE INCREASES IN COMPENSATION (From 1972 to 1979 except as noted) —Continued |
|---|---|
| PHILADELPHIA CITY GOVERNMENT OFFICIALS—Continued | |
| Fire Commissioner | 55.2% |
| Recreation Commissioner | 55.2% |
| Public Prop. Commissioner | 75.0% |
| Public Welfare Commissioner | 58.5% |
| Licenses & Insp. Commissioner | 75.0% |
| Records Commissioner | 72.7% |
| Water Commissioner | 42.9% |
| COMMON PLEAS JUDGES | 12.5% |
| Law clerks, court officers and judges' secretaries | 64.6% (For period from 7/1/72 to 7/1/79 and periodic increments thereafter) |

APPENDIX "C"
(Commonwealth Compensation Commission)
COMPARATIVE INCREASES IN SALARIES OF FEDERAL
AND OF PENNSYLVANIA JUDGES *
(1926 to Date)

UNITED STATES

| Date of Change | United States District Court | United States Court of Appeals | United States Supreme Court |
|---|---|---|---|
| 1926 | $10,000 | $12,500 | $20,000 |
| 1946 | 15,000 | 17,500 | 25,000 |
| 1955 | 22,500 | 25,500 | 35,000 |
| 1964 | 30,000 | 33,000 | 39,500 |
| 1969 | 40,000 | 42,500 | 60,000 |
| 1975 | 42,000 | 44,600 | 63,000 |
| 1977 | 54,500 | 57,500 | 72,000 |
| 1979 | 61,531 | 64,918 | 81,288 |

* Increase granted October, 1979

### PENNSYLVANIA

| Date of Change | Court of Common Pleas | Pennsylvania Superior Court | Pennsylvania Supreme Court |
|---|---|---|---|
| 1929 | $14,000 | $18,000 | $19,500 |
| 1947 | 16,500 | 21,000 | 23,000 |
| 1952 | 18,500 | 23,000 | 25,000 |
| 1956 | 22,500 | 28,000 | 30,000 |
| 1962 | 25,000 | 30,500 | 32,500 |
| 1967 | 30,000 | 35,500 | 37,500 |
| 1972 | 32,500 | 38,000 | 40,000 |
| 1972 | 40,000 | 48,000 | 50,000 |
| 1976 | 45,000 | 53,000 | 55,000 |

## APPENDIX "D"

### 1978 SURVEY OF ATTORNEYS *

| | |
|---|---|
| Mean salary of a partner/shareholder in a firm in the Philadelphia vicinity | $58,550 |
| Mean salary of a lawyer who graduated law school before 1963 (national) | $62,300 |
| Mean salary of a male attorney 44 years of age or older (national) | $64,400 |
| Mean salary of partner in firm with 30–49 lawyers (national) | $70,450 |
| Mean salary of partner in firm 50–99 lawyers (national) | $70,318 |
| Mean salary of partner in firm with 100 or more lawyers (national) | $92,333 |
| Mean salary of attorney who graduated law school before 1963 in firm with 30–49 lawyers (national) | $108,853 |
| Mean salary of attorney who graduated law school before 1963 in firm with 50–99 lawyers (national) | $93,792 |
| Mean salary of attorney who graduated law school before 1963 in firm with 100 or more lawyers (national) | $117,208 |

* S. Langer, Compensation of Attorneys, Part II (1978), available from Abbott, Langer & Associates, P.O. Box 275 Park Forest, IL 60466