545 A.2d 399

Bernard J. Goodheart et al., Petitioners *v.* The Honorable Dick Thornburgh, in his capacity as Governor of the Commonwealth of Pennsylvania et al., Respondents.

Argued February 24, 1988, before President Judge CRUMLISH, JR., and Judges DOYLE, BARRY, COLINS, PALLADINO, McGINLEY and SMITH.

*Henry T. Reath,* with him, *Judith N. Renzulli, Duane, Morris & Heckscher,* for petitioners.

*Jules S. Henshell,* Deputy Attorney General, with him, *Susan J. Forney* and *John G. Knorr,* Senior Deputy Attorneys General, *Andrew S. Gordon,* Chief Deputy Attorney General, Chief, Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for respondents, State Employees' Retirement Board and State Treasurer.

*C. Clark Hodgson, Jr.,* with him, *Ursula B. Bartels, Stradley, Ronon, Stevens & Young,* for respondent, General Assembly of the Commonwealth of Pennsylvania.

Representative *John Kennedy,* Chairman, for Amicus Curiae, Citizens for the Commonwealth.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., July 20, 1988:

The Honorable BERNARD J. GOODHEART et al.[1] filed a petition for review in the nature of mandamus and for declaratory judgment, asking this Court to declare unconstitutional those portions of the 1974 State Employees' Retirement Code, 71 Pa. C. S. §§5101-5956 (1974 Code), which eliminated certain enhanced retirement benefits for members of the Commonwealth judiciary appointed to the bench after its effective date.

After sustaining the preliminary objections of the respondent General Assembly and State Treasurer, and overruling the preliminary objection of the State Employees' Retirement Board (Board), we directed that this case proceed to argument on the merits. The petitioners' and Board's motions for summary judgment are now before us. Because the other members of this Court have an interest in the outcome of this case, disposition of these motions falls to the remaining judge who, having been elevated to the bench before the 1974 Code changes, is not affected by them.

The facts giving rise to this controversy are set forth in the opinion accompanying our disposition of the preliminary objections, *Goodheart v. Thornburgh,* 104 Pa. Commonwealth Ct. 385, 522 A.2d 125 (1987), and do

---

[1] In addition to Judge GOODHEART, petitioners are Judges NELSON A. DIAZ, JOSEPH T. LABRUM, ALEXANDER ENDY, DAVID B. SMITH, THOMAS D. WATKINS, and the Pennsylvania Conference of State Trial Judges, an unincorporated professional organization.

not bear repeating. Suffice it to say the 1974 Code eliminated certain options whereby judges could contribute to the state employees retirement fund at a higher percentage of salary in order to receive proportionately higher benefits. A 1983 amendment to the Code increased the contribution rate for employees from five to 6.25 percent of gross salary. 71 Pa. C. S. §5505.1.

It is these provisions which the parties in their respective motions for summary judgment, supported by affidavits, ask us to review. Of course, summary judgment will only be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Matthews v. Konieczny*, 515 Pa. 106, 527 A.2d 508 (1987).

Petitioners seek a declaration that the changes in the Retirement Code, eliminating enhanced benefits coverage and increasing the employee contribution rate, are unconstitutional because they impair the independent functioning of the judiciary by providing less than adequate compensation, Pa. Const. art. V, §16(a).

## Compensation of the Judiciary

Article V, Section 16(a) of our Commonwealth's Constitution provides:

> (a) Justices, judges and justices of the peace shall be compensated by the Commonwealth as provided by law. Their compensation shall not be diminished during their terms of office, unless by law applying generally to all salaried officers of the Commonwealth.

Thus, there is vested in the legislative branch of our government the power and authority to set the salary scale for the judiciary. *Glancey v. Casey*, 447 Pa. 77, 288 A.2d 812 (1972). If our tripartite form of government is to work, then the "[j]udiciary *must possess* the inherent power to determine and compel payment of those sums

of money which are reasonable and necessary to carry out its mandated responsibilities. . . ." *Commonwealth ex rel. Carroll v. Tate,* 442 Pa. 45, 52, 274 A.2d 193, 197 (1971) *cert. denied,* 402 U.S. 974 (1971) (emphasis in original).

We note at the outset that petitioners do not contend their compensation has been diminished during their terms; nor do they argue that the 1974 and 1983 Code changes have impermissibly impaired any contract they might have with the Commonwealth. Petitioners argue that the retirement benefits component of their compensation, being so unequal to that of their pre-1974 colleagues of the same court, is inadequate.

Unlike earlier constitutions,[2] which provided that judges should receive "an adequate compensation," the present Constitution makes no mention of adequacy. Whatever the reason for this omission, it cannot be seriously argued that the article's framers intended that compensation of judges could or should be inadequate. It is the constitutional obligation of the legislature to provide compensation *adequate* in amount and commensurate with judicial responsibilities. *Glancey.* This mandate guarantees the independence of the judicial branch. Thus, it inures to the good of the citizenry and promotes public confidence as well as the economic security of judges. *Id.* Without this immutable guarantee of independence, venal pressure—under the subtle guise of self-pity—might tempt even the strongest character to violate the trust he in good faith accepted.

"Adequate" means sufficient for a specific purpose. In this case, it necessarily means sufficient to provide judges with a level of remuneration proportionate to their learning, experience and elevated position they occupy in our modern society. Inherent in this defini-

---

[2] Pennsylvania Constitutions of 1790, 1838, and 1874.

tion is the increasingly costly obligations of judges to their spouses and families, to the rearing and education of their children and to the expectation of a decent, dignified life upon departure from the bench. These are the indisputable factors that determine whether compensation is adequate.

In Pennsylvania, public retirement benefits are viewed as deferred compensation. *Catania v. State Employees' Retirement Board*, 498 Pa. 684, 450 A.2d 1342 (1982) (*Catania I*). We must determine whether the deferred, *retirement* benefits component, reduced by the 1974 and 1983 changes in the Code, renders the total compensation package of judges inadequate.

In support of their constitutional challenges, petitioners submit the affidavit of David A. Frankforter, Retirement Benefits Counselor of the Administrative Office of the Pennsylvania Courts. Frankforter's affidavit illustrates, by hypothetical example, the difference in benefits accrued by judges such as the petitioners, who entered service on or after March 1, 1974, and judges who entered service earlier: A pre-1974 judge who retires at age 60 after twenty years of service with a final average salary of $80,000 would receive $56,000 per year. A post-1974 judge of the same age and length of service would receive $32,000. A pre-*1974* judge who opts for Social Security Supplemental retirement benefits would receive an additional $10,566 per year; this option is not given to judges entering service subsequent to the 1974 Code changes. In addition, those judges commissioned to the bench after the 1983 Code amendment, 71 Pa. C. S. §5505.1, must contribute 1.25% more of their salaries for the same amount of benefits. Frankforter affidavit, paras. 4-8.

Frankforter's affidavit summarizes the difference in the present value of benefits. A hypothetical judge who entered judicial service in 1972, retiring at the end of 1991 after twenty years of service with a final average

salary of $80,000 would be entitled to a pension presently worth $827,549. The same judge, entering service in 1972 but under the plan established by the 1974 and 1983 Code changes, would enjoy a pension presently worth $397,824, or less than half of what that pension would be worth without those changes. Frankforter affidavit, para. 9.

Frankforter's hypothetical estimate assumes the exercise of the maximum income (less taxes and cost of living) and terminates on death. Surviving spouse and/or family receive no benefits; the income ceases.

The earlier Code also offered judges an opportunity to *defer* taxation on a larger portion of their income by electing the option to contribute more to the retirement annuity. Thus, pre-1974 Judges also enjoy a tax advantage which their more recently elevated colleagues do not.

On the other hand, the Board argues that a violation of the constitutional obligation to compensate judges adequately requires proof that the independent functioning of the judicial branch is impaired. It has submitted studies which show that post-1974 retirement benefits compare favorably with a representative cross-section of approximately nine hundred private organizations. It also points to the recent vacancies in the Philadelphia Common Pleas Court, which attracted more candidates than there were openings on that bench.

However, we are not persuaded that the number of applications for a position leads ineluctably to the conclusion that the successful applicant will be adequately compensated. The motivation to apply for a judicial position may be based on a number of extrinsic factors. Desirability of an appointment is not based on remuneration alone, and a large number of applications is no guarantee of competency or quality. Nor are we persuaded that favorable comparison of the post-1974 bene-

fits to retirement benefits of private organizations overcomes the disparity in compensation between pre- and post-1974 of the same court, though the Board would have us accept the fact that the *salary* component of judicial compensation is comparable. .

Petitioners rely on the law as stated in *Commonwealth ex rel. The Attorney General v. Mathues*, 210 Pa. 372, 59 A. 961 (1904). There, Justice THOMPSON, deciding the case as a single justice of our Supreme Court, concluded that

> *[t]here can be but one adequate compensation for each of the judges of the same court* because no matter how much greater the experience or learning of one member of it may be than that of another, there can be no difference in the actual performance of judicial functions. . . . It is futile to contend that there may be different adequate compensations for different members of the same court.

*Id.* at 427, 59 A. at 981 (emphasis added).

Petitioners do not argue that incoming executive and legislative officers still retain the enhanced coverage options or that those officers are not required to contribute to the retirement fund at a higher rate.[3] Rather,

_____

[3] As the *Catania* cases make clear, the enhanced benefits coverage remains in effect as to judges elevated to the bench before the 1974 changes because it was determined that any attempt to eliminate or reduce that enhanced coverage would be an unconstitutional unilateral impairment of contracts *as to those judges*, in violation of both our federal and state constitutions. U.S. const. art. I, §10; Pa. Const. art. I, §17. *Catania I* was remanded to the Commonwealth Court for disposition of whether the elimination of enhanced benefits coverage as applied to *non-vested* pre-1974 judges was an unconstitutional impairment of contract. The test of constitutionality under these federal and state protections is whether the legislature has "singled out" the judiciary for either a direct or indirect reduction in compensation. *Catania v. State Employees' Retire-*

petitioners argue that their reduced compensation impairs the independent functioning of jurists because their compensation is insufficient to allow them to perform the duties free of financial insecurity.

The legislature, in fashioning the pre-1974 pension formula, determined then what it considered an adequate compensation package for judiciary. Of course, our economy is not static; nor is any realistic definition of adequacy. It must take into account the pernicious effects of inflation, the increasing obligation of taxes and other economic vagaries. A pension system which does not provide a mechanism to offset these increased costs of living and which accrues interest at a fixed rate generally far lower than those available in the money market is less than adequate if it limits the pensioner's choices at the expense of his spouse and family. Can it be seriously questioned then that a retirement package which offers *less than half* the benefit is adequate?

In support of their argument, the petitioners have shown in a compelling and credible fashion that salaries are a negative factor in our judicial system's ability to attract and retain the highest caliber of judges. They have demonstrated that judges, in pursuing a life of public service, are strictly confined in obtaining additional means of income; that public judicial service will decline as a viable employment alternative as private sector salaries outpace those in the public sphere; and that public trust in the ability and integrity of judges is

---

*ment Board,* 71 Pa. Commonwealth Ct. 393, 410, 455 A.2d 1250, 1258-59 (1983) (quoting *Kremer v. Barbieri,* 48 Pa. Commonwealth Ct. 557, 411 A.2d 558, *aff'd,* 490 Pa. 444, 417 A.2d 121 (1980)) (*Catania II*). There, this Court held that impermissible impairment occurred. In *Catania v. State Employees' Retirement Board,* 108 Pa. Commonwealth Ct. 46, 528 A.2d 1074 (1987) (*Catania III*), we held that a judge with a break in judicial service did not have a contract which could be impaired.

diminished when salaries are so inadequate that judges are perceived to succumb easily to monetary temptation.

We recognize the personal sacrifice which jurists endure, in particular, comparison to attorneys in private practice. We are instructed that proof of personal hardship is not in itself proof that the judicial system's proper functioning has been thereby impaired, *Kremer v. Barbieri*, 48 Pa. Commonwealth Ct. 557, 567, 411 A.2d 558, 563, *aff'd per curiam*, 490 Pa. 444, 417 A.2d 121 (1980), and again recognize that financial concerns and sacrifices are almost universal among working people. Judges, however, have their compensation fixed by the legislature and have, in theory and practice, been subject to the political whims of that body. Moreover, our system of government is dangerously undermined if judges are obliged to look elsewhere for supplemental compensation. The judiciary *must* protect the independence of the courts and *prevent* the impairment of their functions whenever a genuine threat is perceived. *Beckert v. Warren*, 497 Pa. 137, 439 A.2d 638 (1981).

The petitioners in their affidavits have demonstrated in thorough detail the diminution they are constrained to accept in comparison to their pre-1974 colleagues. Sadly, one need only review current media coverage to recognize that the threat to the independent functioning of our judicial system and the undermining of public confidence in it is real. To the extent that devaluation of current judicial compensation contributes to the threat, we have no alternative but to correct this inequity.

All of the significant reductions in post-1974 retirement benefits do not avoid being unequal because the petitioners' increased available income presently expendable does not offset the decrease of their retirement package. Thus, we find that post-1974 judges suffer a diminution in their retirement benefits which renders their compensation inadequate.

Accordingly, we find that the 1974 changes in the Retirement Code, which *reduce* the retirement component of judicial salaries, are constitutionally impermissible. The 1983 Code change, which increased the contribution rate, effected a "net detriment," *American Federation of State, County and Municipal Employes v. Commonwealth,* 80 Pa. Commonwealth Ct. 611, 472 A.2d 746, *aff'd sub nom. Association of Pennsylvania State College and University Faculties v. State System of Higher Education,* 505 Pa. 369, 479 A.2d 962 (1984),[4] to judges of this class. We find this diminution violative of Article V, Section 16(a) because this amendment requires post-1983 judges to pay more of their salaries for the same benefits as post-1974 judges. Of course, this means that post-1983 judges contribute more while receiving *less* than pre-1974 judges.

Having determined that the petitioners have established a constitutional violation under Article V, Section 16(a), it is unnecessary to address their equal protection challenges. We note, however, that the Commonwealth's claim of preserving the actuarial soundness of the retirement fund has not been held to be a sufficiently compelling interest when retirement benefits were implicated.

In his opinion in support of the grant of summary judgment in *Catania I,* Justice (now Chief Justice) Nix noted that no decision suggesting legislative authority to make changes in the retirement system for actuarial soundness involved an instance where benefits to be received were disturbed. *Id.* at 706 and 706 n.1, 450 A.2d at 1353 and 1353 n.1. He reasoned that, because reduc-

---

[4] In this case, this Court and our Supreme Court sustained a challenge brought by vested and non-vested members of the State Employees' Retirement System on the grounds that the 1983 Code changes violated the constitutional prohibition against impairment of existing contracts.

tion of benefits is not the only method by which the actuarial fibers of the retirement fund could be strengthened, reduction was neither reasonable nor necessary. *Id.* at 707, 450 A.2d at 1354. This view was adopted with approval by the Supreme Court in *Association of Pennsylvania State College and University Faculties,* wherein it held that a unilateral devaluation of retirement benefits was an unconstitutional impairment of contract *regardless of the Commonwealth's claim of actuarial enhancement. Id.* at 377, 479 A.2d at 966.

Accordingly, summary judgment is granted in part in favor of petitioners.

### ORDER

Petitioners' motion for summary judgment is granted. Those sections of the Act of March 1, 1974, P.L. 125 (the 1974 Code) eliminating the option to elect "Class E-I" contribution status and "SSI" participation and Section 7 of the Act of July 22, 1983, P.L. 104, increasing the contribution rate are declared unconstitutional as applied to Petitioners. The State Employees' Retirement Board is hereby ordered to recalculate Petitioners' retirement accounts in accordance with the valid provisions of the Act of June 1, 1959, P.L. 392 (the 1959 Retirement Code), and the 1974 Code.

Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS, PALLADINO, MCGINLEY and SMITH did not participate in the decision in this case.